Christopher R. Houk, State Bar No. 020843
**HOUK LAW FIRM**
**50 EAST SOUTHERN AVENUE, SUITE A-3**
**TEMPE, ARIZONA 85282**
Telephone: (480) 569-2377
Facsimile: (480) 569-2379
chouk@houklawfirm.com

Send all Court Documents to:
jmontanez@houklawfirm.com

*Attorney for Plaintiff*

# IN THE UNITED STATES DISTRICT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Smith,<br><br>                          Plaintiff,<br><br>vs.<br><br>City of Mesa, a political subdivision of the State of Arizona,<br><br>                          Defendant. | Case No.<br><br>**CIVIL COMPLAINT AND DEMAND FOR JURY TRIAL** |

In refusing to grant Plaintiff Aaron Smith 1.5 days off to attend mandatory religious training, the City of Mesa violated Title VII of the Civil Rights Act of 1964 by failing to reasonably accommodate Aaron's religious beliefs. Additionally, the City of Mesa constructively discharged him by subjecting him to intolerable work conditions after he requested time off for the religious training—including by forcing him to choose between his sincerely held religious beliefs and his job—and retaliated against him This is an action to correct these unlawful employment practices on the basis of religion.

## Plaintiff's Claims

1. 42 U.S.C. § 2000(e)-2(a)(1) – Title VII – Failure to Provide a Reasonable Accommodation of Plaintiff's Religious Beliefs

2. 42 U.S.C. § 2000(e)-2(a)(1) – Title VII – Termination Based Upon Religion

3. 42 U.S.C. § 2000(e)-2(a)(1) – Title VII – Retaliation for Requesting Religious Accommodation

## The Parties, Jurisdiction, and Venue

4. Plaintiff Aaron Smith is, and at all relevant times, has been

   A. an adult resident of Maricopa County, Arizona and a citizen of the United States;

   B. employed by the City of Mesa as defined by 42 U.S.C. § 2000e(f); and

   C. a person who belongs to the Jehovah's Witness religious faith.

5. Defendant City of Mesa is, and has been at all relevant times material to this Complaint

   A. a political subdivision of the State of Arizona and a body politic, established and operating pursuant to the Arizona Constitution, Art. XIV, § 1, and Title 9 of the Arizona Revised Statutes;

   B. located entirely within Maricopa County;

   C. the employer of Aaron;

   D. acting under color of state law, namely Arizona Constitution, Art. XIV, § 1, and Title 9 of the Arizona Revised Statutes; and

   E. an employer of fifteen (15) or more persons under 42 U.S.C. § 2000e(b).

6. All the events occurred in Maricopa County, Arizona.

7. Aaron seeks relief for counts one through three which all arise from federal statutes. This Court, therefore, has original jurisdiction pursuant to 28 U.S.C. § 1331, and because of the nature of these statutory claims, pursuant to 28 U.S.C. § 1343(a)(3), (4), as well.

8. Based upon the foregoing, the United States District Court for the District of Arizona, Phoenix Division, is the appropriate venue for this action pursuant to 28 U.S.C. § 1391(b).

9. All conditions precedent to filing a lawsuit have been met under 42 U.S.C. § 2000e-5, including filing a charge of discrimination with the Equal Employment Opportunity Commission (EEOC) and the issuance of a right to sue letter.

**Factual Background**

10. Aaron repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

11. Since at least March 4, 2019, Aaron worked for the City of Mesa as Permit Technician II. His job duties included processing construction applications, issuing construction permits, and responding to citizen code complaints for the Department of Development Services.

12. Aaron became a Jehovah Witness at the age of 14 and is currently an Elder or "overseer" in his congregation. In 1999, Aaron became a full-time minister. He worked at his Organization's World Headquarters from 2000 to 2008 then continued in full time ministry in Louisiana until 2014, when he moved to Arizona to help start a new congregation. He continued in ministry while working for the City of Mesa. Because his ministry positions were unpaid, he relied upon secular work for his necessities.

HOUK LAW FIRM, PLLC
1050 East Southern Ave., Suite A-3
Tempe, AZ 85282
Telephone: (480) 569-2377  Fax: (480)569-2379

13. Every three years, the Jehovah's Witness Organization had a training called the School for Congregation Elders. It was a world-wide training program conducted by the Theocratic Schools Department, based out of the Jehovah Witness World Headquarters in New York. In 2020, the School for Congregation Elders met for 4.5 days. Aaron had speaking roles on two of the days of the training. His belief in the tenets of his religion required him to attend the School for Congregation Elders so that he could effectively carry out his responsibilities. The 2010 Yearbook of Jehovah's Witnesses described the importance of the event:

> Training has been a characteristic of the Christian congregation from its very beginning....The intensive week-long instruction covers various aspects of elders' lives, helping them to take the lead in the preaching work and to be more effective teachers in the congregation. The course also encourages them to maintain their spirituality and that of their family and trains them to handle the word of the truth aright when assisting others....In due course the Governing Body will announce arrangements for elders in other places to get the benefit of this timely instruction.[1]

14. At his midterm evaluation in around August 2019, Basford told him he was doing a great job and that he had passed his probation.

15. On or about February 10, 2020, Aaron went to the office of his direct supervisor—Heather Basford—to request time off from work March 2 through March 5, 2020 to attend a mandatory religious ministry training course. Aaron had a sincere belief that the March 2020 training was mandatory for his faith.

16. At the time, Aaron had 2.5 days of paid accrued vacation time available to him. Aaron requested that Basford approve these 2.5 days, along with 1.5 days of voluntary unpaid

---

[1] Watch Tower Bible and Tract Society of New York, Inc. "2010 Yearbook of Jehovah's Witnesses, Containing the Report for the Service Year of 2009," 25-26, https://wol.jw.org/en/wol/d/r1/lp-e/302010009#h=77:0-77:393 (internal citations omitted) (website last visited June 6, 2021).

leave (also known as "dock time") to cover the total time he needed to attend the ministry training course.

17. Basford granted Aaron his 2.5 days of paid accrued vacation time, so Aaron only needed 1.5 days more to cover his training. But, Basford refused to grant Aaron the 1.5 days of voluntary dock time to accommodate Aaron's full request for time off.

18. City of Mesa employees are required to put any approved time off on the City's permit services shared calendar. Out of about a crew of 12 or 13 workers who could have covered for Aaron, only one was scheduled to be off work according to the shared calendar.

19. Basford told Aaron that if he were to take the additional 1.5 hours off, the absence would be counted as Unexcused Absence.

20. Unexcused Absences at the City of Mesa were punishable by discipline, including termination. City of Mesa policy states that the third unexcused absence, the employee "shall receive, at a minimum, a suspension of one (1) day, or discipline up to and including termination with the approval of the Human Resources Director." Mesa Personnel Rules, Section 410(B)(3) (effective June 3, 2015).

21. In fact, previously, in January 2020, Basford told Aaron that failing to follow City of Mesa leave policy could result in discipline to him, including his termination. In January 2020, Basford threatened him with discipline, including termination, because he called in sick 25 minutes, rather than 30 minutes, prior to the start of his shift. This was his second warning. Thus, because another unexcused absence would have been his third, Aaron had a reasonable belief that Basford would discipline him, suspend him, and possibly terminate him, if he were to take an unexcused absence to attend his religious training.

22. During his mid-term review, Basford told Aaron

23. Thus, on or about February 12, 2020, Aaron requested the accommodation of 1.5 days off from Department Director Christine Zielonka, Basford's superior, so he could attend the ministry training course.

24. Less than a week later, on February 18, 2020 Basford extended Aaron's probation, for unjustified reasons.

25. On February 24, 2020, Zielonka responded to Aaron via email, stating that she would not overturn Basford's decision, thus denying his request for voluntary dock time.

26. Neither Basford, Zielonka, or anyone else at the City of Mesa offered any reasons for the denial or alternative options.

27. Around the end of the workday on February 24, 2020, Aaron handed Basford a signed copy of his resignation letter, effective March 3, 2020. The City of Mesa forced Aaron to choose between satisfying the demands of his religion and the requirements of his employer.

28. On February 25, 2020 Aaron lodged a complaint of religious discrimination with HR because his leave request was denied.

29. Within about two weeks after his requested accommodation from Director Zielonka and starting within minutes after his complaint of religious discrimination, Basford

    A. increased her scrutiny of Aaron, starting 45 minutes after he came to work, asking what he had accomplished so far that morning,

    B. criticized his work productivity,

    C. moved Aaron to an undesirable work location in the call center where he could not collaborate on intake with his work partner,

HOUK LAW FIRM, PLLC
1050 East Southern Ave., Suite A-3
Tempe, AZ 85282
Telephone: (480) 569-2377  Fax: (480)569-2379

D. significantly increased his workload, requiring him to do more than double the average amount expected of him in one day, thus setting him up for failure. Even the most experienced permit tech hadn't ever been able to get done as much work as in a day as Basford was requiring of Aaron. Further, Aaron received far less job training than others in his group; For example, one co-worker received about a month of training on the login process while Aaron received one day of such training.

E. changed his work assignments, and

F. put a "Do Not Disturb" sign at his cubicle.

30. At the close of business on February 25, 2020, Basford officially accepted Aaron's resignation.

31. Heather had a reputation for retaliating against employees who reported her to her superiors or HR. For example, in 2019, Heather denied Aaron's request for a travel reimbursement. Aaron reported Basford to HR for not following travel reimbursement rules. Ultimately, the City of Mesa overruled Basford, siding with Aaron, and provided him with a travel reimbursement. In 2019, Aaron experienced retaliation for reporting Heather, including Basford

A. giving him an unjustified reprimand for not attending a training that occurred prior to working hours when others who did not go to the training were not reprimanded, and

B. failing to provide Aaron training, while others received training.

32. On June 11, 2020, Aaron signed a charge of discrimination with the EEOC.

33. On March 22, 2021, the EEOC issued a right to sue letter by mailing it to Aaron.

**Claim I**
**Title VII, 42 U.S.C. § 2000(e)-2(a)(1)**
**Failure to Accommodate Plaintiff's Religious Beliefs**

34. Aaron repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

35. Scheduling changes are a common form of reasonable accommodation.[2] "The accommodation requirement is plainly intended to relieve individuals of the burden of choosing between their jobs and their religious convictions where such relief will not unduly burden others."[3]

> But Title VII does not demand mere neutrality with regard to religious practices—that they be treated no worse than other practices. Rather, it gives them favored treatment….Title VII requires otherwise-neutral policies to give way to the need for accommodation.[4]

A "court's inquiry into the content of religious beliefs is severely limited, and the court may not look to whether the plaintiff's religion mandates or requires the practice in question, the court may nonetheless note whether there is any connection between the plaintiff's religion and the asserted belief or practice."[5]

36. "[C]onstructive discharge exists when working conditions would have been so difficult or unpleasant that a reasonable person in the employee's shoes would have felt

---

[2] *See* 29 C.F.R. § 1605.2(d).
[3] *Protos v. Volkswagen of America, Inc.*, 797 F.2d 129, 136 (3rd Cir. 1986) (citations and quotations omitted).
[4] *E.E.O.C. v. Abercrombie & Fitch Stores*, Inc., 575 U.S. 768, 775 (2015).
[5] *Vetter v. Farmland Industries, Inc.* 884 F.Supp. 1287, 1307 (N.D. Iowa 1995); see also *Heller v. EBB Auto Co.*, 8 F.3d 1433, 1439 (9th Cir. 1993) (stating that courts cannot "delve into the religious practices of an employee in order to determine whether religion mandates the employee's adherence").

Page 8 of 15

compelled to resign." *Lojek v. Thomas*, 716 F.2d 675, 681 (9th Cir. 1983) (quotations and citations omitted) (noting that the Ninth Circuit

> adopted the Fifth Circuit's formulation of constructive discharge first enunciated in *Young v. Southwestern Savings & Loan Association*, 509 F.2d 140, 144 (5th Cir.1975) and later clarified in *Bourque v. Powell Electrical Manufacturing Co.*, 617 F.2d 61, 65 (5th Cir.1980).).

In *Young,* the court found constructive discharge in a religious accommodations case based on her reasonable belief that her absence from mandatory staff meetings would cause her discharge "in one week, one month or two months… because of the conflict between her religious beliefs and company policy." *Young v. Sw. Sav. & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975); "The employee need not be penalized with discharge to establish a prima facie case [in a religious accommodations case]." *Opuku-Boateng v. State of Cal.*, 95 F.3d 1461, 1467 (9th Cir. 1996), *as amended* (Nov. 19, 1996); "The threat of discharge (or of other adverse employment practices) is a sufficient penalty [in a religious accommodations case]." *E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 614 (9th Cir. 1988); *Lawson v. Washington*, 296 F.3d 799, 805 (9th Cir. 2002) (in a religious accommodations case, finding "no evidence that Lawson was threatened with termination or discipline because of his inability to salute the flag and take the oath of office.").

37. Aaron is member of the Jehovah's Witness religious faith.

38. He held bona fide religious beliefs and followed practices that conflicted with the City of Mesa's employment requirements in that the City of Mesa would not allow him to attend the mandatory religious training that he was leading.

39. He informed the City of Mesa of his religious beliefs and practices.

HOUK LAW FIRM, PLLC
1050 East Southern Ave., Suite A-3
Tempe, AZ 85282
Telephone: (480) 569-2377  Fax: (480)569-2379

40. The City of Mesa forced Aaron to resign because of the irreconcilable conflict between the employer mandate and his religious beliefs and practices.

41. A reasonable person in Aaron's position would have felt they were forced to quit working because of intolerable and discriminatory work conditions.

42. As a result of the City of Mesa's actions, Aaron was forced to quit working because of intolerable and discriminatory work conditions.

43. The City of Mesa made no showing either a) of good faith efforts to accommodate Aaron's request or minimize the conflict, *E.E.O.C. v. Ilona of Hungary, Inc.*, 108 F.3d 1569, 1576 (7th Cir. 1997) ("The offered accommodation cannot be considered reasonable, however, because [the employer] does not eliminate the conflict between the employment requirement and the religious practice.") or b) that the requested accommodation would cause an undue hardship. *Ilona of Hungary, Inc.,* 108 F.3d at 1576-77 (no undue hardship where company "allowed employees to take Saturdays off for non-religious reasons" and "had ample time to reassign or to reschedule previously-booked appointments without incurring any financial hardship."); *Opuku-Boateng v. State of Cal.*, 95 F.3d 1461, 1465–66 (9th Cir. 1996), *as amended* (Nov. 19, 1996) (employer failed to show undue hardship where Seventh-Day Adventist plant inspector who did not work the Sabbath was one of 15 plant inspectors at a 24 hour, 7 day a week plant on-Sabbath shifts offered to swap shifts).

44. The unlawful employment practices complained of in the foregoing were and are intentional.

45. The acts or omissions of the Defendant violated Aaron's civil rights under Title VII.

46. As a direct and proximate result of the acts or omissions of Defendant, Aaron incurred lost wages.

47. As a direct and proximate result of the acts or omissions of Defendant, Aaron has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including compensatory damages including for pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, sadness, fear, depression, loss of sleep, nightmares, change in demeanor, and harmed reputation at work. Aaron is reasonably likely to incur more compensatory damages in the future.

48. Aaron is entitled to an award of reasonable attorney's fees 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2 and costs pursuant to 42 U.S.C. § 2000e-5(k), Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

**Claim II**
**Title VII, 42 U.S.C. § 2000(e)-2(a)(1)**
**Disparate Treatment and Termination Based Upon Religion**

49. Aaron repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

50. Aaron is a member of the Jehovah's Witnesses religious faith.

51. The City of Mesa constructively discharged Aaron in violation of the Title VII of the Civil Rights Act of 1964 after he requested time off to attend a religious training when the City of Mesa denied his request.

HOUK LAW FIRM, PLLC
1050 East Southern Ave., Suite A-3
Tempe, AZ 85282
Telephone: (480) 569-2377  Fax: (480)569-2379

52. Defendant—through its acts or omissions—treated Aaron differently than those who were not Jehovah's Witness.

53. Defendant displayed discriminatory animus towards Aaron because he is Jehovah's Witness.

54. Defendant's acts or omissions constitute adverse employment actions.

55. A reasonable person in Aaron's position would have felt they were forced to quit working because of intolerable and discriminatory work conditions.

56. As a result of the City of Mesa's actions, Aaron was forced to quit working because of intolerable and discriminatory work conditions.

57. As a direct and proximate result of the acts or omissions of Defendant, Aaron incurred lost wages.

58. As a direct and proximate result of the acts or omissions of Defendant, Aaron has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including compensatory damages including for pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, sadness, fear, depression, loss of sleep, nightmares, change in demeanor, and harmed reputation at work. Aaron is reasonably likely to incur more compensatory damages in the future.

59. The acts or omissions of the Defendant violated Aaron's civil rights under Title VII.

60. The unlawful employment practices complained of were intentional.

61. Aaron is entitled to an award of reasonable attorney's fees 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2 and costs

HOUK LAW FIRM, PLLC
1050 East Southern Ave., Suite A-3
Tempe, AZ 85282
Telephone: (480) 569-2377  Fax: (480)569-2379

pursuant to 42 U.S.C. § 2000e-5(k), Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

### Claim III
### Title VII, 42 U.S.C. § 2000(e)-2(a)(1)
### Retaliation for Requesting Religious Accommodation

62. Aaron repeats and re-alleges each allegation of this complaint as if fully set forth in this claim.

63. Aaron is a member of the Jehovah's Witnesses religious faith.

64. Defendant violated Title VII of the Civil Rights Act of 1964 when it retaliated against Aaron because he requested time off to attend a religious training.

65. An adverse employment action is "'any adverse treatment that is based on a retaliatory motive and is reasonably likely to deter the charging party or others from engaging in protected activity.'" *Ray v. Henderson*, 217 F.3d 1234, 1242–43 (9th Cir. 2000) (citing EEOC guidance).

66. Defendant subjected Aaron to adverse employment actions because he requested a religious accommodation, including increased her scrutiny of Aaron, criticism of his work productivity, moving Aaron to an undesirable work location, significantly increasing his workload, changing his work assignments to set him up for failure, and humiliating him by putting a "Do Not Disturb" sign at his cubicle.

67. As a direct and proximate result of the acts or omissions of Defendant, Aaron incurred lost wages.

68. As a direct and proximate result of the acts or omissions of Defendant, Aaron has suffered and sustained damages, continues to suffer and sustain damages, and in the future will suffer and sustain damages, in amounts to be proven at trial, including

Page 13 of 15

compensatory damages including for pain, suffering, inconvenience, diminished enjoyment of life, humiliation, outrage, discomfort, anxiety, sorrow, sadness, fear, depression, loss of sleep, nightmares, change in demeanor, and harmed reputation at work. Aaron is reasonably likely to incur more compensatory damages in the future.

69. The unlawful employment practices complained of were intentional.

70. Aaron is entitled to an award of reasonable attorney's fees 42 U.S.C. § 1988 (b), (c), Federal Rule of Civil Procedure 54(d)(2), and Local Rule of Civil Procedure 54.2 and costs pursuant to 42 U.S.C. § 2000e-5(k), Federal Rule of Civil Procedure 54(d)(1), Local Rule of Civil Procedure 54.1, and 28 U.S.C. § 1920.

WHEREFORE, Aaron prays for the following relief:

1. For a declaration that the City of Mesa violated Aaron's rights under Title VII;

2. All relief available under Title VII.

3. For injunctive relief, including a permanent injunction prohibiting the City of Mesa from engaging in discrimination under Title VII;

4. For lost wages;

5. For equitable relief such as employment, promotion, reinstatement, or, in lieu of reinstatement, front pay;

6. For compensation for past and future non-pecuniary losses (including medical expenses) resulting from the unlawful practices under Title VII;

7. For interest on the above amounts at the highest legal rate from the date of Judgment until paid in full;

8. For reasonable attorneys' fees;

9. Taxable costs.

10. All other relief the court shall deem is just.

## Jury Trial Demand

Aaron requests a jury trial on all questions of fact raised by this Complaint pursuant to Rule 38 of the Federal Rules of Civil Procedure.

DATED this 10th day of June, 2021.

**HOUK LAW FIRM, PLLC**

By /s/ Christopher R. Houk
Christopher R. Houk
*Attorney for Plaintiff*