**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Aaron Smith, | No. CV-21-01012-PHX-DJH |
| Plaintiff, | **ORDER** |
| v. | |
| City of Mesa, et al., | |
| Defendant. | |

On March 10, 2023, the Court granted in part and denied in part summary judgment to Defendant City of Mesa ("the City") (Doc. 42) (the "March 2023 Order"). The Court granted the City judgment on the disparate treatment and retaliation claims that Plaintiff Aaron Smith ("Plaintiff") brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq*. ("Title VII"). (*Id*. at 15–23). However, the Court denied the City judgment on Plaintiff's failure to accommodate claim due to issues of fact as to whether the City initiated good faith efforts to accommodate Plaintiff's religious beliefs but could not reasonably do so without facing undue hardship. (*Id*. at 15). The Court accordingly directed the parties to prepare for trial on Plaintiff's remaining Title VII claim.

Plaintiff has since filed a "Motion for Reconsideration of Order on Summary Judgment on Issue of Undue Hardship" (Doc. 50)[1] in light of the Supreme Court's recent decision in *Groff v. DeJoy*, 600 U.S. 447 (2023) ("*Groff*"), which clarified the undue hardship standard in Title VII cases. The Court must determine whether and to what extent

---

[1] The City filed a Response (Doc. 76) and Plaintiff filed a Reply (Doc. 77).

*Groff* impacts the March 2023 Order. For the following reasons, the Court grants Plaintiff's Motion and enters summary judgment in his favor on the issue of undue hardship. The City cannot bring an undue hardship defense at trial.

**I.   Background**[2]

    **A.   The March 2023 Order (Doc. 42)**

In the March 2023 Order, the Court applied the burden shifting framework set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 (1973) to determine whether summary judgment was proper on Plaintiff's failure to accommodate claim. (Doc. 42 at 8 citing *Berry v. Dep't of Soc. Servs.* 447 F.3d 642, 655 (9th Cir. 2006)). The framework imposes the initial burden on the employee to establish a *prima facie* showing that he requested and was denied a religious accommodation. *Id*. If the employee proves a *prima facie* case, the burden then shifts to the employer to establish that "it initiated good faith efforts to [reasonably] accommodate [an] employee's religious practices or that it could not reasonably accommodate the employee without undue hardship." *Id*. (quoting *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 606 (9th Cir. 2004)).

The Court found Plaintiff met his initial burden. (Doc. 42 at 8–10). When evaluating the City's burden, the Court found (1) there was insufficient evidence to hold the City's scheduling system was a reasonable accommodation under Title VII as a matter of law (*id*. at 11–13); (2) there were issues of fact regarding the sincerity of the City's efforts to provide Plaintiff with a reasonable accommodation (*id*. at 13–14); and (3) there were issues of fact regarding whether the City (a) would been left short-staffed at the time Plaintiff requested leave and (b) denied Plaintiff's request to avoid undue hardship. (*Id*. at 15). The latter two factual disputes prevented the Court from entering summary judgment. (*Id*.) To determine whether the City faced undue hardship, the Court applied the *de minimis* standard historically recognized in the Ninth Circuit. (*See id*. at 14 citing *Balint v. Carson City, Nev.*, 180 F.3d 1047 (9th Cir. 1999)).

/ / /

---

[2] The March 2023 Order contains extensive background information on Plaintiff's failure to accommodate claim, and the Court will not repeat it here. (*See* Doc. 42 at 2–5).

### B. The Supreme Court's Decision in *Groff v. DeJoy*

In June 2023, the Supreme Court issued *Groff* and recognized that lower courts have erroneously interpreted *Trans World Airlines, Inc. v. Hardison*, 432 U.S. 63 (1977) ("*Hardison*") to set forth a *de minimis* standard for determining undue hardship in Title VII cases. *Groff*, 600 U.S. at 472 (citing *Hardison*, 432 U.S. at 84). The *Groff* Court clarified that in order for an employer to establish undue hardship, it "must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id*. at 470. It "th[ought] it appropriate to leave the context-specific application of the clarified standard to the lower courts in the first instance." *Id*. at 473.

## II. Legal Standard

Local Rule of Civil Procedure 7.2(g) provides "[t]he Court will ordinarily deny a motion for reconsideration of an Order absent a showing of manifest error or a showing of new facts or legal authority that could not have been brought to its attention earlier with reasonable diligence." L.R.Civ.P. 7.2(g)(1); *see also 389 Orange St. Partners v. Arnold*, 179 F.3d 656, 665 (9th Cir. 1999) (motions for reconsideration are generally denied, "absent highly unusual circumstances, unless the district court is presented with newly discovered evidence, committed clear error, or if there is an intervening change in the controlling law"). Both parties characterize *Groff* as an intervening change in the undue hardship standard that controls this case. (Doc. 76 at 1). The Court agrees. Because the Court applied a now displaced *de minimis* standard in its March 2023 Order, *Groff* merits reconsideration of that Order as it relates to Plaintiff's failure to accommodate claim.

## III. Discussion

Title VII makes it unlawful "for an employer not to make reasonable accommodations, *short of undue hardship*, for the religious practices of his employees and prospective employees." *Hardison*, 432 U.S. at 74 (emphasis added). Plaintiff argues that following the Supreme Court's decision in *Groff*, no reasonable jury could find that accommodating him with 1.5 days of unpaid leave would result in undue hardship to

the City. (Doc. 77 at 9). Plaintiff thus requests the Court to grant him summary judgment on the issue of undue hardship. (Doc. 50 at 5). The City contends that regardless of *Groff*, determining undue hardship is a context specific analysis that more appropriately reserved for the trier of fact. (Doc. 76 at 2). It further argues that even if the Court were to grant Plaintiff summary judgment on the issue of undue hardship, that ruling is not dispositive of Plaintiff's failure to accommodate claim because additional issues of fact remain—namely, whether Plaintiff was subjected to an adverse employment action and whether the City's generous time-off policy was a reasonable accommodation. (*Id.* at 9–11).

The Court first reconsiders the City's undue hardship defense under the clarified standard announced in *Groff*. Finding that the City fails to show undue hardship, the Court then considers the greater implications of this conclusion on Plaintiff's failure to accommodate claim.

### A. Whether the City Can Show Undue Hardship Under *Groff*

Title VII obligates employers to accommodate their employees' religious practices unless doing so would impose an "undue hardship on the conduct of the employer's business." 42 U.S.C. § 2000e(j). In *Hardison*, the Supreme Court stated that to require an employer "to bear more than a *de minimis* cost in order to give [an accommodation] is an undue hardship." 432 U.S. at 84.[3] The Ninth Circuit has cited to *Hardison* for the proposition that an employer may generally show hardship where (1) an accommodation "results in . . . more than a *de minimis* cost to the employer, which could include additional costs in the forms of lost efficiency or higher wages[;]" or (2) an accommodation "would have more than a *de minimis* impact on other employees, such as depriving the other employees of seniority rights or causing them to shoulder plaintiff's share of the work." *Balint*, 180 F.3d at 1054. The Court applied this standard in the March 2023 Order to determine whether the City's claimed staffing hardships constituted a sufficient defense.

---

[3] *Hardison* also made clear that seniority rights among employees are afforded special treatment under Title VII when addressing requests for religious accommodations. 432 U.S. at 81. The Court will not discuss this issue as the City did not raise seniority systems in either its Response to Plaintiff's Motion for Summary Judgment (Doc. 27) or its Opposition to Plaintiff's Motion for Reconsideration (Doc. 76).

(Doc. 42 at 14–15). The Court concluded there were factual disputes that precluded summary judgment on Plaintiff's failure to accommodate claim. (*Id*. at 14). Three months later, the Supreme Court held in *Groff* that the *de minimis* standard the Court applied in its March Order was insufficient to assess undue hardship under Title VII. 600 U.S. at 468. To show undue hardship, an employer must instead establish that accommodating the request would pose a substantial burden on the employer's business. *Id*.[4]

### 1. The Clarified Hardship Standard in *Groff*

The plaintiff in *Groff* was an Evangelical Christian who was unwilling to work on the Sunday Sabbaths. 600 U.S. at 454. In light of the plaintiff's religious beliefs, the plaintiff's employer made efforts to designate the plaintiff's work to other staff members even though those employees were not ordinarily responsible for performing that type of work. *Id*. at 455. The plaintiff continued to receive discipline for failing to work on Sundays, and so the plaintiff resigned. *Id*. The plaintiff filed suit against his employer, arguing it could have accommodated his Sunday Sabbath practice without undue hardship to its business. *Id*. The district court granted summary judgment because "the impact that would be felt by the other [employees] if [the plaintiff] was permitted to be skipped in the schedule every Sunday would clearly be more than *de minimis*, and [the employer] [met] its burden of proving undue hardship." *Groff v. DeJoy*, 2021 WL 1264030, *12 (E.D. Pa. Apr. 6, 2021). On appeal, the circuit court affirmed, citing to *Hardison* for the proposition "that requiring an employer 'to bear more than a de minimis cost' to provide a religious accommodation is an undue hardship." *Groff v. DeJoy*, 35 F.4th 162, 174 n.18 (3d Cir. 2022). The *Groff* Court granted certiorari to clarify the contours of the undue hardship

---

[4] Ten opinions within the Ninth Circuit have applied the clarified standard in *Groff* since its publication. *See Bordeaux v. Lions Gate Ent., Inc.*, 2023 WL 3667353 (C.D. Cal. May 5, 2023); *Demeyer v. St. Charles Health Sys., Inc.*, 2023 WL 5614946 (D. Or. July 3, 2023); *Payne v. St. Charles Health Sys.*, 2023 WL 4711431 (D. Or. July 6, 2023); *Johnson v. St. Charles Health Sys., Inc.*, 2023 WL 5155591 (D. Or. July 21, 2023); *Conner v. Raver*, 2023 WL 5498728 (N.D. Cal. Aug. 24, 2023); *MacDonald v. Or. Health & Sci. Univ.*, 2023 WL 5529959 (D. Or. Aug. 28, 2023); *Brown v. NW Permanente, P.C.*, 2023 WL 6147178 (D. Or. Sep. 20, 2023); *Trusov v. Or. Health & Sci. Univ.*, 2023 WL 6147251 (D. Or. Sep. 20, 2023); *Gamon v. Shriners Hosps. for Children*, 2023 WL 7019980 (D. Or. Oct. 25, 2023); *Zimmerman v. PeaceHealth*, 2023 WL 7413650 (W.D. Wash. Nov. 9, 2023). Among those, *Bordeaux v. Lions Gate Ent., Inc.* is the only opinion that addressed undue hardship on a motion for summary judgment. 2023 WL 3667353.

standard set forth by *Hardison*. *Groff*, 600 U.S. at 456.

The *Groff* Court found that lower courts had erroneously interpreted an isolated phrase from *Hardison* to mean that an employer must only show "more than a *de minimis* cost," or something "very small or trifling" to establish undue hardship in the Title VII context. *Id*. at 464, 469, 467. When read in context, the Court found a better "understand[ing of] *Hardison* to mean that 'undue hardship' is shown when a burden is substantial in the overall context of an employer's business." *Id*. at 468. That is—"the requisite burden, privation, or adversity would have to rise to an 'excessive' or 'unjustifiable' level." *Id*. The *Groff* Court determined that the clarified standard "may prompt little, if any, change in the [Equal Employment Opportunity Commission's] guidance explaining why no undue hardship is imposed by temporary costs, voluntary shift swapping, occasional shift swapping, or administrative costs. *Id*. at 471 (citing 29 C.F.R. § 1605.2(d)).

The *Groff* Court also clarified two points that frequently arose in applying the undue hardship framework. The Court first confirmed that in assessing the effect of an employee's requested accommodation on the overall "conduct of the employer's business," not all impacts on coworkers are relevant to the query. *Id*. at 472 (quoting 42 U.S.C. § 2000e(j)). The Court noted, for example, that a coworker's dislike of the religious practice being accommodated—though it may potentially affect the business—is "not cognizable to factor into the undue hardship inquiry." *Id.* (cleaned up). Second, the Court clarified that "Title VII requires that an employer reasonably accommodate an employee's *practice of religion*, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Id*. at 473 (citing *Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444, 455 (7th Cir. 2013)) (emphasis added).

2. **The City Fails to Establish that Accommodating 1.5 Days of Leave Would Have Posed Undue Hardship**

When applying the clarified standard in *Groff* to the City's undue hardship defense, the Court finds the City failed to establish how Plaintiff's absence would have substantially

- 6 -

burdened its overall business, nor demonstrated how any and all other accommodations would have posed an undue hardship to the conduct of its business.

### a. The City Fails to Show How Plaintiff's Requested Accommodation Would Have Effected the Conduct of Its Business

The Court must first assess whether and to what extent Plaintiff's requested accommodation would affect the City's business. *Id*. at 472 (quoting 42 U.S.C. § 2000e(j)). During this analysis, "courts should resolve whether a hardship would be substantial in the context of an employer's business in the common-sense manner[.]" *Id*. at 471. When applying the *de minimis* hardship standard in the March 2023 Order, the Court found there were issues of fact regarding whether the City would been left short staffed at the time Plaintiff requested leave and thus denied Plaintiff's request to avoid undue hardship. (Doc. 42 at 15). Plaintiff argues under the clarified standard in *Groff*, the City would not have been substantially burdened by granting Plaintiff 1.5 days of paid leave. The City disagrees and says it would have faced undue hardship because the Department "was busy and had short deadlines." (Doc. 76 at 23). It contends the Department "only ha[d] a team of eight [permit technicians]" and "that presents a hardship when you keep piling on people being off." (*Id*. at 4). The City further maintains it was difficult for Ms. Basford to maintain sufficient employee coverage because "staffing levels had a tendency to be uncertain on any given day." (*Id*. at 3, 5–6). The Court agrees with Plaintiff that the City fails to meet its burden to establish an undue hardship defense.

To start, the City must do more than outline the workload of the specific department that Plaintiff worked to demonstrate undue hardship. (Doc. 76 at 2–3). The City speaks in generalities to claim the Department was "short-staffed" and "very busy" and so Plaintiff's absence would be burdensome on the Department's operations. (*Id*. at 3). But apart from stating it was "difficult" for the Department to have absent employees, the City does not quantify or otherwise explain how Plaintiff's absence for 1.5 additional days would have resulted in substantial increased costs in relation to its business. *Groff*, 600 U.S. at 470.

For example, the City has not articulated any concrete financial harm that would result from granting Plaintiff unpaid leave. Although the City states that absent employees would result in "reallocating resources" that could result in potential "refunds" to customers if there are delays (Doc. 76 at 6), those costs are unascertained, merely conceivable, or hypothetical. *See E.E.O.C. v. Townley Eng'g & Mfg. Co.*, 859 F.2d 610, 615 (9th Cir. 1988). This is in contrast to *Bordeaux v. Lions Gate Entertainment*, where the employer showed it would potentially sustain $1,500,000.00–3,000,000.00 in additional costs should it be required to grant the plaintiff's requested accommodation. 2023 WL 3667353, at * 7, *14 (C.D. Cal. May 5, 2023) (holding the employer demonstrated undue hardship under *Groff* because granting the plaintiff an exemption from a COVID vaccine requirement posed the potential of operation shutdowns due to quarantine requirements). Here, the City does not claim any substantial burdens or concrete costs that would result from Plaintiff's absence.

Similarly, the City's allegations that Plaintiff's absence would impact other co-workers are too vague to establish undue hardship. The Court has already settled that "a claim of undue hardship . . . must be supported by proof of *actual* imposition on coworkers or disruption of the work routine." (Doc. 42 at 15) (citing *Townley*, 859 F.2d at 615). *Groff* further made clear that "not all impacts on co-workers are relevant, but only coworker impacts that go to affect the conduct of the business." 600 U.S. at 472. To the extent the City claims Plaintiff's leave would impact other permit technicians, the City does not describe the nature of those impacts or identify how those impacts would pose a substantial burden to the City's overall operations. This is again in contrast to *Bordeaux*, where the employer showed plaintiff's requested vaccine exemption would pose a risk to the health and safety of other co-workers and impact operations should the employer have to find substitutes for co-workers who fell ill. 2023 WL 8108655, at *13.

The City also relies on Ms. Basford's testimony to claim that granting Plaintiff leave would have impacted Ms. Basford's ability to maintain sufficient staffing levels. However, the record shows the Department was accustomed to facing gaps in staffing and needed to

regularly adapt to scheduling challenges. For example, in her deposition, Ms. Basford explained that Department employees "regularly used unscheduled sick leave, last minute requests for vacation/discretionary leave, and time for training." (Doc. 76 at 8 citing Doc. 34-4 at 4–5). The City further agrees that "[b]ased on the uncertainty of staffing levels (as mirrored by the Department's course of performance), Ms. Basford anticipated that multiple employees would take unscheduled time off during any particular week." (*Id*. at 3). Plaintiff's request for 1.5 days off therefore did not pose a circumstance that subjected the City to burden that rose to an "excessive" or "unjustifiable" level. *See Groff*, 600 U.S. at 468; *c.f. Adeyeye*, 721 F.3d at 455 (finding that an employer could not show undue hardship when an employee requested three weeks of unpaid leave because the employer "expected and planned for the frequent turnover of employees").

Furthermore, Plaintiff points out—and the City does not dispute—that Ms. Basford conceded that she would have granted Plaintiff requested accommodation if he had enough paid time off. (Doc. 50 at 4). Ms. Basford averred at her deposition that she approved Plaintiff 2.5 days off because he had the vacation time accrued, and would have approved his full request for 4 days off had he had the additional 1.5 days accrued. (Doc. 36-5 at 34–35). This is evidence that Plaintiff's requested accommodation would not have posed a "substantial cost" to the City in the common-sense manner. *See Groff*, 600 U.S. at 471. Although the Court precluded summary judgment due to issues of facts as to whether the City's claimed hardship would pose more than a *de minimis* cost, it finds the City cannot meet its burden of showing Plaintiff's request for 1.5 days of unpaid leave would substantially affect its overall business.

        **b.**       **The City Fails to Show that Any and All Other Accommodations Would Have Imposed Undue Hardship**

The Court also finds the City failed to demonstrate that any and all other potential accommodations to Plaintiff would have imposed undue hardship. *See* 42 U.S.C. § 2000e(j). The March 2023 Order found disputes of material facts as to the City's motive and sincerity of its efforts to make alternative arrangements to accommodate Plaintiff.

(Doc. 42 at 13–14). Although these issues were material under the erroneous *de minimis* standard for undue hardship, the Court finds these issues of facts are no longer material under *Groff*'s heightened undue standard. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted."). This is because the alternatives the City considered are either insufficient or would not pose undue hardship to the City.

Plaintiff argues the City did not adequately conduct an undue hardship analysis for other possible accommodations because it did not know it had to do so in the first instance. (Doc. 77 at 1). The City contends it considered and properly ruled out three different ways to accommodate Plaintiff: (1) it maintained a "generous time off policy" to accommodate time off, which Plaintiff had already exhausted; (2) Plaintiff's supervisor had already approved multiple leave requests to accommodate Plaintiff's religion; and (3) Plaintiff could not work an alternative schedule to "flex" his time because he had to work 40 hours within any given work week and "having an individual permit tech work overtime was generally not authorized." (Doc. 76 at 4–5).

Regarding the City's first proposed alternative, the March 2023 Order settled there is inadequate evidence that the City's "generous time off policy" by itself constitutes a reasonable accommodation for any and all religious requests as a matter of law. (Doc. 42 at 11–13) (rejecting the City's legal authority as non-binding and non-controlling). The Court explained that the mere existence of the City's scheduling system did not relieve it from its duty to explore other reasonable alternatives. (*Id*. at 13 citing *Balint*, 180 F.3d at 1056). So, the City's first alternative, without more, is insufficient to relieve the City of its burden to reasonably accommodate Plaintiff. *See Groff*, 600 U.S. at 443 (in certain circumstances, assessing one alternative is not enough and "[c]onsideration of other options . . . would be necessary"). The City's second proposed alternative is inherently insufficient because hardships that are attributed to a coworker's dislike of "the very notion of accommodating religious practice cannot be considered 'undue.'" 600 U.S. at 472. The City cannot rely

on the previous religious accommodations it granted Plaintiff to justify its denial of Plaintiff's separate request for an accommodation to attend to Elders Training.

As to the City's third proposed alternative, the City concluded that to grant Plaintiff 1.5 days off and allow him to work an alternative schedule to make up his time missed was unfeasible for two reasons. First, the City maintains Plaintiff could not "flex" his leave hours to a different week because he had to work 40 hours within any given work week and allowing him to "work the prior week would not have allowed him to complete the work that was needed to be completed during the week he was missing." (Doc. 76 at 5). But the City fails to explain how allowing Plaintiff to shift the amount of hours he works to a different week would result in a substantial burden the overall conduct of its business. *Groff*, 600 U.S. at 468. Indeed, Ms. Zielonka stated that when the Department does not meet their turn around time, the Department "contact[s its] customers and tell[s] them there's going to be a delay." (Doc. 76-1 at 3). The City fails to explain why a delay in the work it expected Plaintiff to complete the during the 1.5 days he sought leave would have resulted in substantial costs. Second, the City contends it could not allow Plaintiff to work overtime because it was "generally not authorized" and a "supervisor needed to be there." (Doc. 76 at 5). This justification is also insufficient under *Groff* and contradicts the summary judgment record. Ms. Zielonka stated the City "had people working overtime a fair amount with prior approval" and "it was at the supervisor's discretion based on the needs." (Doc. 76-1 at 5).

Although the City argues the issue of undue hardship is more appropriately resolved by the trier of fact (Doc. 76 at 2), no reasonable person could find that providing Plaintiff with 1.5 days of unpaid leave would result in an "excessive" or "unjustifiable" burden to the City's overall business under the present factual record. *See Groff*, 600 U.S. at 468. The Supreme Court has indeed recognized unpaid leave as a generally reasonable and satisfactory form of an accommodation for employees' religious schedules. *See Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 70–71 (1986). The City has also failed to demonstrate that any and all other potential accommodations to Plaintiff would have

imposed undue hardship. And Title VII requires the City to reasonably accommodate Plaintiff's practice of religion, "not merely that it assess the reasonableness of a particular possible accommodation or accommodations." 600 U.S. at 473 (citing *Adeyeye*, 721 F.3d at 455 (holding that to permit an employee to take three weeks of unpaid leave in conjunction with one week of vacation was a reasonable religious accommodation as a matter of law)).

Plaintiff is therefore entitled to judgment on the matter of undue hardship and the City cannot rely on this affirmative defense at trial.

### B.     Whether Resolution of the Undue Hardship Issue is Dispositive of Plaintiff's Failure to Accommodate Claim

Having settled that the City failed to show Plaintiff's requested accommodation or any other alternative would result in undue hardship, this begs the question of whether that conclusion is dispositive of Plaintiff's failure to accommodate claim. The City contends it is not because additional issues of fact remain to be resolved at trial—namely, (1) whether the City's generous time-off policy was a reasonable accommodation, and (2) whether Plaintiff was subjected to an adverse employment action. The Court agrees with the City.

First, the March 2023 Order settled there was insufficient evidence to hold as a matter of law that the City's scheduling system was a reasonable accommodation under Title VII. *See supra* Section III.A(2)(b) (citing Doc. 42 at 11–13). But this is not to say a reasonable juror could not find the City's scheduling system was a reasonable accommodation. The Court agrees with the City that this analysis is appropriate for the fact finder to resolve at trial. (Doc. 76 at 11). Second, in finding Plaintiff made a *prima facie* showing of a failure to accommodate claim, the March 2023 Order settled it is undisputed that Plaintiff meets the first and second requirements—that is, Plaintiff "had a bona fide religious belief, the practice of which conflicts with an employment duty; [and] he informed his employer of the belief and conflict." (Doc. 42 at 8 quoting *Berry*, 447 F.3d at 655). As to the third requirement that Plaintiff suffer an adverse employment action, the Court concluded "a reasonable jury could find that Plaintiff faced a threat being disciplined

if he was absent from work to attend the Elders Training." (Doc. 42 at 10). Again, the Court agrees with the City that this analysis is appropriate for the fact finder resolve at trial. (Doc. 76 at 10).

### IV.   Conclusion

In clarifying the undue hardship standard in Title VII cases, the *Groff* Court emphasized that "a bevy of diverse religious organizations has told this Court that the *de minimis* test has blessed the denial of even minor accommodation in many cases, making it harder for members of minority faiths to enter the job market." 600 U.S. at 465. The Court concludes that in this case, the City failed to show that Plaintiff's religious accommodation request for 1.5 days of unpaid leave posed undue hardship as a matter of law. The City has not met its burden to show that Plaintiff's requested accommodation, or any other alternative, would result in substantial increased costs in relation to the conduct of its particular business. *Id*. at 470 (citing *Hardison*, 243 U.S. at 83 n. 14). The City is precluded from bringing an undue hardship defense at trial.

Accordingly,

**IT IS HEREBY ORDERED** Plaintiff Aaron Smith's "Motion for Reconsideration of Order on Summary Judgment on Issue of Undue Hardship" (Doc. 50) is **granted** and the City is precluded from raising the undue hardship defense at trial.

**IT IS FURTHER ORDERED** that the Clerk of Court shall **vacate** the March 10, 2023, Order to the extent it relates to the issue of undue hardship (Doc. 42). The remainder of the March 10, 2023, Order is **affirmed**.

Dated this 1st day of December, 2023.

Honorable Diane J. Humetewa
United States District Judge