1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Aaron Smith,                                    No. CV-21-01012-PHX-DJH

10                    Plaintiff,                      **ORDER**

11   v.

12   City of Mesa, et al.,

13                    Defendant.

14

15           The parties have filed their motions in limine in advance of the Final Pretrial

16   Conference set for December 6, 2023.  (Doc. 79).  Plaintiff Aaron Smith ("Plaintiff") filed

17   one Motion in Limine (Doc. 56), to which Defendant City of Mesa (the "City") filed a

18   Response in Opposition (Doc. 72).  The City filed eight Motions in Limine (Docs. 57; 58;

19   59; 60; 61; 62; 63; 64), to which Plaintiff filed Responses in Opposition (Docs. 69; 66; 67;

20   68; 71; 73; 74; 75).  The Court will address each Motion in turn.

21   **I.      Legal Standards**

22           **A.      Motions in Limine**

23           "Although the Federal Rules of Evidence do not explicitly authorize in limine

24   rulings, the practice has developed pursuant to the district court's inherent authority to

25   manage the course of trials." *Luce v. United States*, 469 U.S. 38, 40 n.4 (1984).  The Ninth

26   Circuit has explained that motions in limine "allow parties to resolve evidentiary disputes

27   ahead of trial, without first having to present potentially prejudicial evidence in front of a

28   jury."  *Brodit v. Cabra*, 350 F.3d 985, 1004–05 (9th Cir. 2003) (citations omitted).

1    Generally, motions in limine that seek exclusion of broad and unspecific categories of

2    evidence are disfavored.  *See Sperberg v. Goodyear Tire and Rubber Co.*, 519 F.2d 708,

3    712 (6th Cir. 1975). Motions in limine are "entirely within the discretion of the Court."

4    *Jaynes Corp. v. American Safety Indem. Co.*, 2014 WL 1154180, at *1 (D. Nev. March 20,

5    2014) (citing *Luce*, 469 U.S. at 41–42).  Moreover, "[a] motion in limine is not the proper

6    vehicle for seeking a dispositive ruling on a claim, particularly after the deadline for filing

7    such motions has pass."  *Hana Fin., Inc. v. Hana Bank*, 735 F.3d 1158, 1162 (9th Cir.

8    2013), *aff'd*, 135 S. Ct. 907, 190 L. Ed. 2d 800 (2015) (citing *Dubner v. City & Cnty. Of*

9    *S.F.*, 266 F.3d 959, 968 (9th Cir. 2001)).

10        Motions in limine are "provisional" in nature.  *Goodman v. Las Vegas Metro. Police*

11   *Dep't*, 963 F.Supp.2d 1036 (D. Nev. 2013), *aff'd in part, rev'd in part, and dismissed in*

12   *part on other grounds,* 613 F. App'x 610 (9th Cir. 2015).  The Court issues its rulings on

13   motions in limine based on the record currently before it.  Therefore, rulings on such

14   motions "'are not binding on the trial judge [who] may always change his [or her] mind

15   during the course of a trial.'"  *Id*. (quoting *Ohler v. United States*, 529 U.S. 753, 758 n.3

16   (2000)) (citing *Luce*, 469 U.S. at 41 (noting that in limine rulings are always subject to

17   change, especially if the evidence unfolds in an unanticipated manner))).  "'Denial of a

18   motion in limine does not necessarily mean that all evidence contemplated by the motion

19   will be admitted to trial.  Denial merely means that without the context of trial, the court is

20   unable to determine whether the evidence in question should be excluded.'"  *Id*. (quoting

21   *Ind. Ins. Co. v. Gen. Elec. Co.*, 326 F.Supp.2d 844, 846 (N.D. Ohio 2004)).

22       **B.    Relevance**

23       Many of the parties' Motions in Limine argue certain evidence should be excluded

24   as irrelevant or unfairly prejudicial.  Rule 401[1] provides that "[e]vidence is relevant if it

25   has any tendency to make a fact more or less probable than it would be without the evidence

26   and the fact is of consequence in determining the action."  Fed. R. Evid. 401.   Under

27   Rule 402, relevant evidence is admissible unless otherwise provided.  Fed. R. Evid. 402.

28

---

[1] Except where otherwise noted, all Rule references are to the Federal Rules of Evidence.

1    However, all relevant evidence is subject to the balancing test set forth by Rule 403.  That

2    is, a court "may exclude relevant evidence if its probative value is substantially outweighed

3    by a danger of one or more of the following: unfair prejudice, confusing the issues,

4    misleading the jury, undue delay, wasting time, or needlessly presenting cumulative

5    evidence."  Fed. R. Evid. 403.

6    **II.      Discussion**

7              This is an employment discrimination case based on an employer's alleged denial

8    of an employee's request for a religious accommodation.  Plaintiff alleges the City

9    discriminated against him when it denied his request for 1.5 days of unpaid leave to attend

10   the "School for Congregation Elders" ministry training event (the "Elders Training")

11   hosted by the Jehovah's Witness Organization.  (Doc. 1 at ¶¶ 13–17).  Plaintiff resigned

12   from his position with the City in order to attend the Elders Training.  (Doc. 35-4).  Plaintiff

13   filed suit against the City for failure to accommodate under Title VII.  (Doc. 1 at ¶¶ 34–

14   48).  The Court now considers the parties' Motions in Limine in anticipation of the Final

15   Pretrial Conference on December 6, 2023.

16            **A.      Plaintiff's Motion in Limine (Doc. 56)**

17            In this Motion in Limine, Plaintiff seeks to exclude all evidence relating to his

18   performance as an employee with the City.  (Doc. 56 at 1).  Plaintiff argues that although

19   this evidence was relevant to his now dismissed disparate treatment claim, "his

20   performance has nothing to do with either [his] Religious Accommodation Request [] or

21   the reasons the City as given for denying his request[.]"  (*Id*. at 2–3).  He represents

22   evidence of his performance is separate and distinct from evidence of the City's alleged

23   threat to terminate him due to noncompliance with its attendance policies.  (*Id*. at 1).  He

24   contends the latter should be admitted while the former should be precluded.  (*Id*.)

25            The City argues evidence of Plaintiff's performance may be relevant depending on

26   the allegations that Plaintiff offers at trial.  For example, the City maintains that if Plaintiff

27   alleges his supervisor scrutinized and retaliated against him, evidence of his performance

28   is necessary to rebut those allegations and demonstrate the City had neutral, non-retaliatory

1    reasons for its actions.[2] (Doc. 72 at 2).  The City also represents such evidence is necessary

2    to rebut arguments that Plaintiff performed well as an employee.  (*Id.* at 3).

3        The Court agrees with the City that evidence of Plaintiff's performance may be

4    relevant to whether or not the City's decisions were based on Plaintiff's religion.  Indeed,

5    when dismissing Plaintiff's retaliation claim, the Court found the City met its burden to

6    show neutral, non-retaliatory reasons for its actions that were connected to Plaintiff's

7    performance.  (Doc. 42 at 21–22).  Furthermore, the Court is not persuaded by Plaintiff's

8    argument that the City's alleged threat of discipline regarding Plaintiff's non-compliance

9    with attendance policies "is not performance related but instead pertains to the Court's

10   discussion on adverse action."  (Doc. 56 at 1).  Plaintiff alleges he received two warnings

11   regarding his attendance and "because another unexcused absence would have been his

12   third, [he] had a reasonable belief that [his supervisor] would discipline him, suspend him,

13   and possibly terminate him, if he were to take an unexcused absence to attend his religious

14   training."  (Doc. 1 at ¶ 21).  So, evidence of Plaintiff's performance—i.e., why and how he

15   incurred two prior unexcused absences—would be relevant to the reasonableness of

16   Plaintiff's belief.  This probative value outweighs any prejudice posed to Plaintiff by

17   evidence of his performance.  *See* Fed. R. Evid. 403.

18       The Court will therefore deny Plaintiff's Motion in Limine No. 1 (Doc. 56).  The

19   City may introduce evidence of Plaintiff's work performance when necessary to show the

20   City's neutral, non-retaliatory reasons for its actions, and when relevant to Plaintiff's belief

21   that he would be disciplined if he incurred a third unexcused absence to attend the Elders

22   Training.

23   / / /

24   / / /

25

26   [2] The City also argues Plaintiff's performance is necessary to rebut (a) potential testimony
     by Plaintiff's wife and (b) Plaintiff's reliance on other employee's personnel records and
27   timecards.  (Doc. 72 at 2).  However, as explained *supra*, these are nonissues because the
     Court will grant the City's Motions in Limine Nos. 2 and 7 (Docs. 58; 63).  Plaintiff's wife
28   will be prohibited from testifying at trial, *see supra* Section II.B(2), and Plaintiff will be
     precluded from introducing evidence of other employees' personnel files and timecards.
     *See supra* Section II.B(7).

1      **A.**     **The City's Motions in Limine**

2            **1.**     **The City's Motion in Limine No. 1 (Doc. 57)**

3          In this Motion in Limine, the City argues Plaintiff cannot testifying about damages

4  of back pay, front pay, or other injuries due to unemployment. (Doc. 57 at 1). The City

5  maintains Plaintiff cannot seek these types of damages because the Court held Plaintiff was

6  not constructively discharged as a matter of law, and so Plaintiff is limited to emotional

7  damages on his failure to accommodate claim. (*Id*. at 2 citing Doc. 42 at 23). Plaintiff

8  contends that testimony regarding back pay, front pay, and loss of employment are relevant

9  to show (1) the emotion pain and suffering he experienced due to the City's denial of his

10  accommodation; (2) that his fears of losing his job was reasonable; and (3) that his fears of

11  being unable to find another job in light of covid was reasonable. (Doc. 69 at 2).

12          Back pay awards under Title VII describes damages to make a person "whole for

13  injuries suffered through past discrimination." *Loeffler v. Frank*, 486 U.S. 549, 558 (1988).

14  "An employee who quits cannot secure backpay unless his employer constructively

15  discharged him." *Satterwhite v. Smith*, 744 F.2d 1380, 1381 n.1 (9th Cir. 1984). So, any

16  testimony about backpay is irrelevant because the Court has already found that Plaintiff

17  was not constructively discharged as a matter of law. (Doc. 43 at 9); *see Zhang v. Cnty. of*

18  *Monterey*, 2021 WL 1788615, at *5 (N.D. Cal. May 4, 2021) ("evidence of dismissed

19  claims is no longer relevant and can be excluded").

20          Front pay describes "damages paid as [prospective] compensation for training or

21  relocating to another position. An award of front pay is made in lieu of reinstatement when

22  the antagonism between employer and employee is so great that reinstatement is not

23  appropriate." *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1020 (9th Cir. 2000) (quoting

24  *Fadhl v. City and County of San Francisco*, 741 F.2d 1163, 1167 (9th Cir. 1984))

25  (alterations in original). To receive front pay damages, a "plaintiff must show that her

26  employer's violations of Title VII caused her loss of employment." *Gotthardt v. Nat'l R.R.*

27  *Passenger Corp.*, 191 F.3d 1148, 1155 (9th Cir. 1999). In its December 3, 2023 Order, the

28  Court concluded "a reasonable jury could find that Plaintiff faced a threat of being

1    disciplined if he was absent from work to attend the Elders Training", and this analysis is
2    appropriate for the fact finder to resolve at trial.  (Doc. 80 at 12–13).  So, testimony about
3    front pay may be relevant to Plaintiff's failure to accommodate claim if he can show that
4    he resigned due to the City's denial of his request for a religious accommodation.  The
5    Court finds the same with respect to other damages relating to Plaintiff's unemployment.
6         The Court will therefore grant in part and deny in part the City's Motion in Limine
7    No. 1 (Doc. 57).  Plaintiff may not introduce evidence of backpay damages.  However,
8    Plaintiff may offer testimony of front pay damages and other injuries due to Plaintiff's
9    unemployment.

10                    **2.      The City's Motion in Limine No. 2 (Doc. 58)**
11        In this Motion in Limine, the City moves to preclude Plaintiff from calling his wife
12   to testify at trial because Plaintiff did not timely disclose her as a witness.  (Doc. 58 at 1).
13   The City represents Plaintiff disclosed his wife as a fact witness more than eleven months
14   after the July 1, 2022, discovery deadline.  (*Id.*)  Plaintiff contends his wife should be
15   allowed to testify notwithstanding his untimely disclosure because her testimony would be
16   harmless under Federal Rule of Civil Procedure 37.[3]  (Doc. 66 at 2 citing Fed. R. Civ. P.
17   37(c)(1)).
18        The Court's Scheduling Order (Doc. 11) expressly supersedes the "thirty-day before
19   trial" disclosure deadline contained in Federal Rule of Civil Procedure 26, and requires that
20   "all exhibits and witnesses that may be offered at trial [be] disclosed before the close of
21   discovery[.]"  (*Id.* at 3–4).  Therefore, the Court will grant the City's Motion in Limine
22   No. 2 (Doc. 58) due to Plaintiff's failure to comply with the Court's deadlines.

23                    **3.      The City's Motion in Limine No. 3 (Doc. 59)**
24        In this Motion in Limine, the City seeks to preclude Plaintiff from introducing
25   evidence of other "complaints" that Plaintiff had with the City—namely, (1) the City forced
26   Plaintiff to resign; (2) the City retaliated against him for filing an internal complaint or

---

[3] Federal Rule of Civil Procedure 37 provides "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless."  Fed. R. Civ. P. 37(c)(1).

1  requesting a religious accommodation; (3) Plaintiff's supervisor criticized Plaintiff for not

2  attending a job-related training session; (4) Plaintiff's supervisor denied Plaintiff's request

3  for milage reimbursement; and (5) the City asked him to sign a loyalty oath when he was

4  first hired.  (Doc. 59 at 2–4).  The City argues these allegations are irrelevant under

5  Rules 402 and 403 because they relate to Plaintiff's dismissed disparate treatment and

6  retaliations claims, not Plaintiff's request for a religious accommodation.  (*Id*. at 2).

7  Plaintiff argues these allegations are relevant under Rule 404[4] because they go to the City's

8  motive, intent, or absence of mistake when denying Plaintiff's requested religious

9  accommodation. (Doc. 67 at 2).  Plaintiff contends a reasonable jury could find that his

10  prior complaints demonstrate the City's hostile acts were tied to Plaintiff's religion.  (*Id*.)

11  Because the City's motive and sincerity of its efforts to accommodate Plaintiff's

12  request for religious accommodation is a question of fact, evidence of the City's animus,

13  hostility, or reaction to Plaintiff taking leave for religious reasons is relevant to Plaintiff's

14  failure to accommodate claim.  *See Proctor v. Consol. Freightways Corp. of Delaware*,

15  795 F.2d 1472, 1477 (9th Cir. 1986) (explaining that an employers' motive and intent are

16  "crucial elements" in a failure to accommodate claim under Title VII).  But admissibility

17  of such evidence depends on its form and is subject to the Rule 403 balancing test.  So, at

18  the Final Pretrial Conference, the Court will further probe with Plaintiff what proffered

19  evidence and testimony he intends to introduce regarding his prior complaints with the

20  City.

21  The Court will thus withhold its ruling on the City's Motion in Limine No. 3

22  (Doc. 59).

23  **4.      The City's Motion in Limine No. 4 (Doc. 60)**

24  In this Motion in Limine, the City argues two categories of evidence should be

25  precluded.  First, the City seeks to preclude evidence of the parties' proceedings at the

26  Equal Employment Opportunity Commission ("EEOC") that preceded this lawsuit.

27

28  [4] Rule 404 provides that evidence of an act to prove a person's character is admissible for proving "motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." Fed. R Evid. 404.

1   (Doc. 60 at 1).  Plaintiff argues the City's "position statement" to the EEOC (Doc. 35-2) is

2   relevant because it contains admissions by the City regarding its decision to deny Plaintiff's

3   request for leave to attend the Elders Training.  (Doc. 68 at 4).  The City suggest any

4   evidence of the parties' EEOC proceedings is prohibited under Rule 408 (Doc. 60 at 3),

5   which provides that "conduct or a statement made during compromise negotiations about

6   the claim" is not admissible "either to prove or disprove the validity or amount of a disputed

7   claim or to impeach by a prior inconsistent statement or a contradiction."  Fed. R. Evid.

8   408(a)).  The City further contends its position statement is irrelevant under Rule 403

9   because it contains discussion of Plaintiff's dismissed disparate treatment and retaliation

10  claims.  (Doc. 60 at 4).

11          The City does not cite to, and the Court is unaware of, any legal authority treating

12  all evidence of EEOC proceedings as settlement negotiations under Rule 408.[5]  The Ninth

13  Circuit has indeed allowed evidence of EEOC proceedings in certain circumstances.

14  *See e.g.*, *Plummer v. Western International Hotels Co.*, 656 F.2d 502, 505 (9th Cir. 1981).

15  Even so, the Ninth Circuit "[has] not establish[ed] a *per se* rule of admissibility for all

16  EEOC determinations, and the district courts should instead exercise its discretion in ruling

17  on the admissibility of [specific] documents [that d]efendants seek to admit into evidence."

18  *McAllister v. Hawaiiana Mgmt. Co., Ltd.*, 2012 WL 13168543, at *11 (D. Haw. Oct. 22,

19  2012) (denying an employer's motion to introduce an EEOC Letter of Determination and

20  an EEOC Director's Letter finding no Title VII violations due to prejudice under Rule 403)

21  (citing *Hawn v. Executive Jet Mgmt, Inc.*, 615 F.3d 1151, 1161 (9th Cir. 2010)).

22          Here, the Court finds any probative value provided by the City's position statement

23  is outweighed by risk for prejudice.  The position statement contains irrelevant discussion

24  of Plaintiff's now dismissed claim.  *See Zhang*, 2021 WL 1788615, at *5.  It also makes

25  ─────────────
    [5] The City cites to *Samadi v. Quality Furniture LLC*, 2012 WL 12870242 (D. Ariz. July
26  23, 2012) for the proposition that evidence associated with EEOC proceedings are
    generally inadmissible under Rule 408.  (Doc. 60 at 3).  However, *Samadi* dealt with the
27  confidentiality of EEOC mediations specifically as well as the EEOC's Alternative Dispute
    Resolution Policy Statement.  2012 WL 12870242, at *3.  EEOC mediations are an
28  alternative to the investigative and litigation processes.  *See* Questions and Answers About
    Mediation,    United    States    Equal    Employment    Opportunity    Commission,
    https://www.eeoc.gov/questions-and-answers-about-mediation.

1  legal arguments regarding the City's undue hardship defense, which is precluded at trial

2  per the Court's December 3, 2023 Order (Doc. 80).  The position statement's discussion of

3  various legal authorities further poses a risk of confusing the jury.  Thus, the Court will

4  prohibit Plaintiff from introducing the City's position statement at trial.

5          Second, the City argues evidence of any subsequent remedial measures the City

6  took to make religious discrimination less likely in the workplace is precluded under Rules

7  407 and 403.  (Doc. 60 at 2).  Rule 407 provides that "[w]hen measures are taken that

8  would have made an earlier injury or harm less likely to occur, evidence of the subsequent

9  measures is not admissible to prove . . . culpable conduct[.]"  Fed. R. Evid. 407.  Although

10 the City's subsequent measures poses risk of prejudice to the City, the Court finds this

11 evidence is probative of the City's knowledge and conduct to provide religious

12 accommodations.  This probative value outweighs the risk of prejudice posed to the City.

13 *See* Fed. R. Evid. 403.  Furthermore, Rule 407 provides an exception that allows evidence

14 of subsequent measures to be admitted for impeachment purposes and proving "the

15 feasibility of the precautionary measures."  Fed. R. Evid. 407; *see Transgo, Inc. v. Ajac*

16 *Transmission Parts Corp.*, 768 F.2d 1001, 1020 (9th Cir. 1985).

17         The Court will grant in part and deny in part the City's Motion in Limine No. 4

18 (Doc. 60).  Plaintiff may introduce evidence of the City's subsequent remedial measures.

19 However, the City cannot seek a blanket preclusion of any and all documents relating to

20 the EEOC proceedings without conducting the requisite 403 balancing test regarding a

21 specific document.  To the extent the City's Motion relates to the City's position statement,

22 Plaintiff is precluded from introducing the document due to risk of confusing the issues.

23 In the event the City introduces an inconsistent statement from the EEOC proceeding,

24 Plaintiff may introduce any such evidence for impeachment purposes.

25         **5.      The City's Motion in Limine No. 5 (Doc. 61)**

26        In this Motion in Limine, the City seeks to preclude Plaintiff from introducing his

27 medical records at trial for the following reasons: (1) Plaintiff's medical records are

28 irrelevant and prejudicial under Rules 402 and 403 because they concern Plaintiff's kidney

1    transplant from March 2018, which predates Plaintiff's request for a religious

2    accommodation in February 2020 and is unrelated to Plaintiff's claim for damages;

3    (2) Plaintiff did not disclose a medical professional to testify at trial as required by Rules

4    701, 702, and 901; and (3) Plaintiff's medical records contain hearsay under Rules 802 and

5    803.  (Doc. 61 at 2–3).  Plaintiff argues his medical records are material to his failure to

6    accommodate claim because they justify why Plaintiff had otherwise exhausted his unpaid

7    leave with the City.  (Doc. 71 at 3).  Plaintiff further represents his kidney transplant is

8    "highly probative" of the damages he suffered in demonstrating his fear of being able to

9    find another job with a "health vulnerability."  (*Id*. at 1).

10        The Court finds Plaintiff's medical records should be precluded because any

11   probative value of Plaintiff's kidney transplant is outweighed by the risk of prejudice posed

12   to the City.  *See* Fed. R. Evid. 403.  Although Plaintiff anticipates his records are necessary

13   to "refute the City's claim that [Plaintiff] could have fit the hours he needed for his religious

14   accommodation into the hours [the City] claims it reasonably provide" (Doc. 71 at 3),

15   Plaintiff does not need to directly introduce his medical records of a kidney transplant to

16   substantiate his prior requests for time off.  Evidence of Plaintiff's employment records

17   would be sufficient for the jury to determine whether the City's time-off policy and

18   scheduling system constituted a reasonable accommodation under Title VII.

19   (*See* Doc. 80 at 12).  The Court further agrees with the City that the record shows Plaintiff

20   has not relied on his medical condition in his failure to accommodate claim.  In sum, the

21   Court will not permit him to bring in new evidence of health-related reasons per Rules 403

22   and 401.

23        The Court will therefore grant the City's Motion in Limine No. 5 (Doc. 61).

24              **6.        The City's Motion in Limine No. 6 (Doc. 62)**

25        In this Motion in Limine, the City seeks to preclude Plaintiff from introducing

26   evidence that he was designated as ineligible for rehire by the City.  (Doc. 62 at 1).  The

27   City argues the designation is irrelevant because it occurred on March 4, 2020, which is

28   after Plaintiff requested a religious accommodation on February 10, 2020, and voluntarily

1    resigned effective March 3, 2020.  (*Compare* Doc. 62-2 *with* Doc. 62-1).  Plaintiff argues

2    this type of designation "carries with it the suggestion that something about [Plaintiff]

3    makes him an undesirable or tainted employee", "raises suspicion as to [the City's] motive

4    and intent" and shows the City had "hostility toward [Plaintiff] when [it] failed to

5    accommodate [Plaintiff's] request for a religious accommodation."  (Doc. 72 at 2).

6          The Court agrees with Plaintiff.  Because the City's designation occurred after

7    Plaintiff's request for a religious accommodation, the action is relevant as to the City's

8    motive or discriminatory intent.  *See Sweeney v. Chang*, 2019 WL 1431583, at *6, *3 (C.D.

9    Cal. Mar. 26, 2019) (finding "evidence and testimony about events occurring after plaintiff

10   resigned . . . may be relevant to the element of discriminatory intent"); *see also Garcia v.

11   PSI Env't Sys.*, 2012 WL 2359496, at *7 (D. Idaho June 20, 2012) (denying an employer's

12   motion to exclude evidence of its pay and hiring decisions after the employee resigned

13   because "this might tend to prove that [the] plaintiff was in fact discriminated against").

14   Indeed, an employer's intent to discriminate may be inferred from circumstantial evidence.

15   *See McGinest v. GTE Serv. Corp.*, 360 F.3d 1103, 1122 (9th Cir. 2004).

16         Therefore, the Court will deny the City's Motion in Limine No. 6 (Doc. 62).

17         **7.      The City's Motion in Limine No. 7 (Doc. 63)**

18         In this Motion in Limine, the City argues Plaintiff should be prohibited from

19   introducing evidence of other employees' personnel files and timecards.  (Doc. 63 at 1).

20   The City argues such evidence is not relevant to Plaintiff's failure to accommodate claim

21   and substantially outweighed by the risk of confusing the issues and wasting the jury's

22   time.  (*Id.*)  The City cites to *Jauregui v. Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)

23   for the proposition that documents related to other employees are only relevant to disparate

24   treatment claims, which the Court dismissed from this action.  (*Id.*)  Plaintiff argues his co-

25   workers' documents are relevant to (1) refute the City's claims of undue hardship as merely

26   hypothetical; or (2) provide background "information related to [the other employee's] job

27   title, job duties, and dates of employment."  (Doc. 74 at 2).

28         At the outset, Plaintiff does not need his co-workers' records to refute an undue

1    hardship defense because the City is precluded from presenting this defense at trial per

2    the Court's December 3, 2023 Order (Doc. 80).  And although Plaintiff does not indicate

3    any intent to use his co-workers' records as comparator evidence, the Court agrees with the

4    City that to allow Plaintiff to do so would allow him a second chance at a disparate

5    treatment claim.  In the Court's March 10, 2023 Order (Doc. 42), the Court granted the

6    City summary judgment on Plaintiff's disparate treatment claim and found the following:

7
> Plaintiff [] failed to present any legitimate "comparator" evidence . . . .
8    Although Plaintiff identifie[d] instances where other employees were granted
> time off, he [did] so to argue the City would not have faced staffing
9    hardships. . . . Plaintiff did not show through the comparators that any
> similarly situated individual outside his protected category was treated more
10   favorably.

11

12   (*Id*. at 17) (internal citations and quotations omitted).  It is unclear why "determining dates

13   of employment, job titles, and job duties of the [other] employees" are relevant to

14   Plaintiff's failure to accommodate claim.  (Doc. 74 at 2).

15           Therefore, the Court will grant the City's Motion in Limine No. 7 (Doc. 63).

16                  **8.       The City's Motion in Limine No. 8 (Doc. 64)**

17           In this Motion in Limine, the City moves to preclude Plaintiff from introducing

18   the City's internal policies as evidence.  (Doc. 64 at 1).  The City argues its policies are not

19   relevant to whether the City provided Plaintiff a religious accommodation under Rule 402.

20   (*Id*. at 2).  The City contends that to allow Plaintiff to submit to the jury that the City's anti-

21   discrimination policy was deficient would be unfairly prejudicial, and "a potential violation

22   of an internal policy does not establish Title VII liability."  (*Id*. at 2–3 citing *Cousins v.*

23   *Lockyear* , 568 F.3d 1063, 1070 (9th Cir. 2009)).  It further maintains the jury's analysis

24   should focus on whether the City provided Plaintiff an accommodation, not whether the

25   City's policy specifically addresses religious accommodations. (*Id*. at 3).

26           Plaintiff argues the City's internal and discrimination policies are relevant for the

27   following reasons: (1) the Supreme Court has stated that discrimination policies "are at the

28   *very core* of Title VIIs aim to avoid and address discrimination"; (2) the City's internal

1    policies are relevant to the City's motives because to approve or deny Plaintiff's request

2    for unpaid leave was in the sole discretion of his supervisor; and (3) the City's internal

3    policies are relevant to Plaintiff's believe he suffered a threat he may have been suspended

4    or terminated for taking a third unexcused absence to attend the Elders Training.

5    (Doc. 75 at 2–3).

6         Plaintiff's Supreme Court authorities are not directly on point to determining the

7    relevancy of an employer's internal policies to an employee's failure to accommodate

8    claim.[6]   Nonetheless, the Court agrees with Plaintiff that certain aspects of the City's

9    internal policies are relevant to his claims.  Because Plaintiff's supervisor maintained

10   discretion to grant Plaintiff's request for leave, the City's internal policies are relevant to

11   her understanding of what the City expected when handling religious accommodations.

12   Moreover, the Court finds the City's attendance policies are relevant to determine whether

13   Plaintiff has met element three of a *prima facie* showing of a failure to accommodate

14   claim—that is, Plaintiff suffered an adverse employment action. (Doc. 80 at 12–13).  The

15   Court stated, "a reasonable jury could find that Plaintiff faced a threat of being disciplined

16   if he was absent from work to attend the Elders Training." (*Id*. citing Doc. 42 at 10).

17   Indeed, Plaintiff alleges that attending the Elders Training would result in his third

18   unexcused absence, and he believed his supervisor would have discipline him under the

19   City's policy for unexcused absences.  (Docs. 1 at ¶ 21; 75 at 3).

20   ─────────────
     [6] *Kolstad v. Am. Dental Ass'n* discussed why holding employers liable for punitive

21   damages when they engage in good faith efforts to comply with Title VII is in tension with
     principles of common law limitations on vicarious liability.  527 U.S. 526, 544 (1999).

22   The Supreme Court stated that "an employer may not be vicariously liable for the
     discriminatory employment decisions of managerial agents where these decisions are

23   contrary to the employer's good-faith efforts to comply with Title VII", which includes
     adopting antidiscrimination policies and educating employees on Title VII's prohibitions.

24   *Id*. at 545 (internal citations and quotations omitted).  *Albemarle Paper Co. v. Moody*
     addressed the standard district courts should follow in whether to award or deny backpay

25   when an employer engaged in an unlawful discriminatory employment practice.  422 U.S.
     405 (1975).  In this context, the prospect of a backpay award provides incentives for

26   employers to "self-examine and to self-evaluate their employment practices and endeavor
     to eliminate" instances of discrimination. *Id*. at 428.  Last, *Faragher v. City of Boca Raton*

27   identified the circumstances when an employer is vicariously liable for actionable
     discrimination caused by a supervisor.  524 U.S. 775 (1998).  The Court emphasized the

28   employer's internal policies to determine what reasonable care and safeguards the
     employer had in place to avoid and eliminate sexual harassment among its employees when
     it might occur.  *Id*. at 805.

1    Therefore, the Court will deny the City's Motion in Limine No. 8 (Doc. 63).

2    However, Plaintiff must lay foundation for why a specific policy is relevant to his claims

3    under Rules 401 and 403.

4        Accordingly,

5        **IT IS HEREBY ORDERED** that Plaintiff's Motion in Limine and the City's

6    Motions in Limine Nos. 6 and 8 (Docs. 56; 62; 64) are **DENIED** without prejudice, subject

7    to further objection at trial.

8        **IT IS FURTHER ORDERED** that the City's Motions in Limine Nos. 2, 5, and 7

9    (Docs. 58; 61; 63) are **GRANTED**.

10       **IT IS FURTHER ORDERED** that the City's Motions in Limine Nos. 1 and 4

11   (Doc. 57; 60) are **GRANTED** in part and **DENIED** in part as set forth in this Order.

12       **IT IS FURTHER ORDERED** that the Court will withhold its ruling on the City's

13   Motion in Limine No. 3 (Doc. 59).

14       **IT IS FINALLY ORDERED** that at the Final Pretrial Conference, with respect to

15   the City's Motion in Limine No. 3 (Doc. 59), Plaintiff shall specify what proffered evidence

16   and testimony he intends to introduce at trial regarding his prior complaints with the City

17   that would show the City's animus, hostility, or reaction to Plaintiff taking leave for

18   religious reasons.

19       Dated this 4th day of December, 2023.

20

21

22                                      Honorable Diane J. Humetewa
23                                      United States District Judge

24

25

26

27

28