1    **WO**

2

3

4

5

6                    **IN THE UNITED STATES DISTRICT COURT**

7                        **FOR THE DISTRICT OF ARIZONA**

8

9    Aaron Smith,                                    No. CV-21-01012-PHX-DJH

10                    Plaintiff,                      **ORDER**

11   v.

12   City of Mesa,

13                    Defendant.

14

15          Plaintiff Aaron Smith ("Plaintiff") has filed a Rule 59 Motion for a New Trial

16   (Doc. 109) to which the Defendant, City of Mesa ("the City"), has filed a Response in

17   Opposition. (Doc. 119). No Reply has been filed and the time to do so has long passed.

18          Plaintiff asserts that he was denied an opportunity to present trial evidence that Mesa

19   granted unpaid "dock" time to employees which would have challenged the

20   "reasonableness" of the City's accommodation. (Doc 109 at 1). The City counters that the

21   type of evidence Plaintiff identifies is comparator evidence of "[o]ther employee

22   timecards" which is only relevant to a disparate treatment claim, a claim this Court

23   dismissed prior to trial. (Doc. 119 at 1). The Court agrees with the City.

24   **I.      Background**

25          Plaintiff filed claims asserting that his employer, the City, violated Title VII of the

26   Civil Rights Act of 1964, 42 U.S.C.S. § 2000e et seq. (Doc. 1). Plaintiff alleged the City

27   religiously discriminated and retaliated against him during his employment. He alleged

28   three claims: (1) failure to accommodate his religious beliefs; (2) disparate treatment and

1   constructive discharge based upon his religion; and (3) retaliation for his request for a

2   religious accommodation. (*Id*. at ¶¶ 34–70).

3        Both parties filed Motions for Summary Judgment on all three claims.

4   (Docs. 35 and  36). The Court denied summary judgment on Plaintiff's failure to

5   accommodate claim, but granted summary judgment in the City's favor on his disparate

6   treatment and retaliation claims. (Doc. 42).  The Court found that Plaintiff pled a sufficient

7   religious discrimination claim under a failure to accommodate theory because he made a

8   *prima facie* case showing he was denied a religious accommodation, and there were

9   genuine disputes of material fact on the City's efforts to accommodate him without facing

10  undue hardship.  (*Id*. at 15).

11       **A.  The Pretrial and Trial Motions**

12       The Court set a jury trial for March 6, 2023, on the narrow question of whether the

13  City unreasonably failed to accommodate Plaintiff's request for 1.5 days of unpaid leave

14  to attend the "School for Congregation Elders" ministry training.  Before trial, the Court

15  considered the parties' Motions in Limine and made several rulings on what evidence could

16  and could not be presented to the Jury.

17       The City filed a Motion in Limine seeking to preclude Plaintiff from introducing

18  evidence of other employees' personnel files and timecards.  The City argued that these

19  documents were not relevant to his failure to accommodate claim and substantially

20  outweighed by the risk of confusing the issues and wasting the jury's time. (Doc. 63 at 1).

21  Plaintiff countered that his co-workers timecards were relevant to (1) refute the City's

22  claims of undue hardship as merely hypothetical; or (2) provide background "information

23  related to [the other employee's] job title, job duties, and dates of employment." (Doc. 74

24  at 2).

25       In ruling on the Motion, the Court reminded Plaintiff that records of other

26  employee's jobs, titles, job duties, and titles were unnecessary to refute an undue hardship

27  defense because the City was precluded from presenting this defense at trial.  (*See* Doc. 80,

28  December 2, 2023 Order citing *Groff v. DeJoy*, 600 U.S. 447 (2023)).   The Court

1    questioned why "determining dates of employment, job titles, and job duties of the [other]

2    employees" was relevant to Plaintiff's failure to accommodate claim. Importantly, the

3    Court stated that though Plaintiff did not say he intended to use his co-workers' records as

4    comparator evidence, an attempt to do so would allow him a second opportunity to advance

5    a disparate treatment claim, which had already been dismissed on summary judgment. This

6    was so because Plaintiff

7
         failed to present any legitimate "comparator" evidence . . . .. Although
8        Plaintiff identifie[d] instances where other employees were granted time off,
         he [did] so to argue the City would not have faced staffing hardships. . . .
9        Plaintiff did not show through the comparators that any similarly situated
         individual outside his protected category was treated more favorably.
10

11   (Doc. 42 at 17).  So, the Court precluded him from using the other employee files at trial.

12   (Doc. 80).

13        Despite the Court's ruling, Plaintiff filed a Trial Memorandum (Doc 92) again

14   asserting that "[o]ther employees' time cards [sic] go to the heart of the issue of the

15   reasonableness of various accommodations" and flagging his intent to introduce the City's

16   approval of dock time for three other employees.  (*Id*. at 1–2).  Alternatively, Plaintiff

17   intended to introduce this evidence to impeach the City.  (*Id*. at 2).  The City responded

18   that "documents related to other employees are **only** relevant to disparate treatment claims

19   [and] the Court already ruled on this issue." (Doc. 93 at 2) (emphasis in original) (citing

20   *Jaurequi v. Glendale*, 852 F.2d 1128, 1134 (9th Cir. 1988)).  The City reiterated that the

21   Court dismissed his disparate treatment claim. (*Id*.)  The City further argued that the

22   timecards are not relevant to Plaintiff's remaining claim, and they would only confuse the

23   jury about the issue to be tried."  (*Id*.) Responding to Plaintiff's use of timecards for

24   impeachment purposes, the City retorted that it "should be excluded . . . for the same reason

25   the Court granted summary judgment on the disparate treatment claim, 'Plaintiff did not

26   show through the comparators that any similarly situated individuals outside his protected

27   category was treated more favorably.' " (*Id*.)  The Court agreed with the City once again

28   and precluded Plaintiff from using the other employee timecards.

On the second day of trial, Plaintiff re-urged the admission of other employee timecards which he characterized as "comparator-type evidence." (Doc. 115 at 7–10). He asserted that "on the issue of time-cards, we believe the door has been opened to other uses of an employee timecards" because the City's witness testified that an employee worked so much dock time that she had to crack down on it:

> This is a timecard reference to other employees. She also talked about how other employees were treated; that others had do not disturb signs; that she does this for all employees; that there's a pattern amongst staff of calling in late. This is all comparator-type evidence that we have rebuttal to.

(*Id*. at 7–8). The City opposed Plaintiff's renewed motion stating "[w]e've addressed this multiple times. The comparative evidence would require an analysis of whether [sic] any of the other people who received this time [were] in the protected class that Mr. Smith had done [sic]. He's not done any of that evidence." (*Id*. at 8). The City then noted that it was Plaintiff's counsel who elicited other employee timecard testimony from a defense witness, which is improper because Plaintiff's counsel can't open the door to introduce evidence that they were previously instructed are seeking to introduce." (*Id*. at 9).

The Court ruled that indeed it was improper for Plaintiff's counsel to open the door to the use of evidence that the Court previously precluded. (*Id*.) The Court also found that the evidence is comparator evidence of how other employees' timecards were managed was irrelevant to the narrow issue being tried, and it would confuse the jury. (*Id.*) The Court reminded counsel that it had already ruled on this matter. (*Id.*)

**B. The Trial**

Plaintiff proceeded to trial on his failure to accommodate claim on March 6, 2024. The testimony and evidence showed that Plaintiff was hired by the City on March 4, 2019, as a Permit Technician II. (Doc. 114 at 11–12). As a new hire, Plaintiff was on one-year of probation. (*Id*. at 83). His job included processing construction permit applications to ensure the plans met code requirements, quality control, and payment processing among other tasks. (*Id*. at 7). Permit Technicians also worked in the Call Center, taking calls for development services like building inspections, and code compliance. (*Id.*) They also

1    manned the front counter to assist walk-in customers.  (*Id*.)

2        Plaintiff was supervised by Heather Basford, who supervised several Permit

3    Technicians and other employees.  (*Id*. at 6).  She was supervised by Ms. Hughes-Ornelas,

4    who reported to Christine Zielonka.  (*Id*.)  One reason Plaintiff accepted the position was

5    that the City agreed to grant him dock-time for a preplanned trip because, as a new

6    employee, he had not yet acquired leave.  (Doc. 113 at 37).  Ms. Basford testified that in

7    deciding whether to approve time-off requests she considered the employees workload,

8    staffing, and the status of operations among other considerations.  (Doc. 114 at 43).

9    Ms. Basford testified that her policy was to not generally approve dock-time for employees

10   once they had had an opportunity to accrue time.  (*Id*. at 71).

11       Plaintiff testified that Ms. Basford never denied a time-off request where he had

12   enough accrued time to cover his absences.  (Doc. 113 at 45).  She also approved several

13   of his requests for dock-time.  (*Id*. at 35–37; Exh. 102).  Plaintiff agreed that if an employee

14   had time available and you requested that time, Ms. Basford would approve the request.

15   (*Id*. at 51;Doc. 114 at 63).  Plaintiff testified that throughout his employment, he was

16   granted multiple requests for leave, including leave he used to attend numerous religious

17   conferences and preaching at congregations.  (Doc. 113 at 40–45).

18       On January 7th Ms. Basford reminded Plaintiff to provide sufficient notice to his

19   supervisor when taking leave occurred.  That day, Plaintiff was to have arrived at work by

20   7:45 a.m. and at 7:20 a.m. he texted Ms. Basford that he was running late as his labs were

21   taking longer than expected.  (Doc. 114 at 12; Exh. 63; 105).  Ms. Basford texted "okay"

22   and at 9:35 a.m. she sent him an email that included a July 2000 email she had sent to other

23   employees of the City's rules when taking leave which includes a half-an-hour notice of

24   any absence.  (*Id*. at 15;  Exh. 5).  The July 2000 email included "[f]ailure to report within

25   the specific time period may result in the employee being docked pay subject to

26   disciplinary action, and up to and including termination." (*Id*. at 17; Exh. 5).  Ms. Basford

27   testified that she noticed a pattern with Plaintiff so she wanted to remind him of the City's

28   policy so she added the phrase "up to and including termination" which was consistent

1    with the City's policy.  She nonetheless approved two-hours of sick leave for Plaintiff that

2    day and he did not receive any discipline for his late notice.

3        At Plaintiff's six-month evaluation, Ms. Basford concluded that based on his job

4    performance and lack of progress, she would recommend Plaintiff be terminated.

5    (*Id*. at 96).  Her request was denied by the Human Resources Department ("H.R.") because

6    they wanted more documentation. (*Id*. at 96-97).  By January 2020, Ms. Basford did not

7    think Plaintiff was going to successfully complete his probationary term.  (*Id*. at 84–85).

8    She identified instances where Plaintiff failed to complete assignments, including

9    complying with the requirement to provide half-an-hour notice for expected leave as she

10   had previously instructed all employees.  (*Id*. at 84–90).  Plaintiff apparently had not

11   complied with this requirement three times after being told to.

12       On January 28, 2020, Plaintiff received a letter about his speaking assignment with

13   the School of Congressional Elders and of his requirement to attend from March 2 through

14   6, or risk losing his elder status. (Doc. 115 at 93–93; Exh. 2).  Plaintiff testified that he

15   learned about this religious conference sometime in August 2019.  (*Id*. at 95).  Plaintiff

16   testified that he had enough leave to cover all but 1.5 days to attend the religious training

17   event.  (Doc. 113 at 8–9).

18       On February 3, 2020 Ms. Basford wrote a request to her supervisors that Plaintiff

19   be terminated due to his lack of productivity and progress.  (Doc. 114 at 85; Exh. 107). She

20   was overruled by H.R who counseled that instead of termination she should extend his

21   probation for an additional year.  (*Id*. at 96).  So, she began working on a Corrective Action

22   Plan/Memorandum of Understanding ("the Plan"), to present to Plaintiff to enable him to

23   avoid termination.    (*Id*. at 97).    She identified six areas where Plaintiff needed

24   improvement. (*Id*. at 88; Exhs. 106;116).   The Plan included benchmarks for Plaintiff to

25   meet to enhance his job performance.  (*Id*. at 90).  Plaintiff submitted his resignation before

26   Ms. Basford could deliver the Plan.  (Doc. 114 at 86).  Ms. Basford testified that though

27   the City had not heretofore implemented Title VII training on religious accommodations,

28   she stated that she was not trying to fire Plaintiff on account of his religion.  (*Id*.)

On February 10, 2020, at the end of the day, Plaintiff asked Ms. Basford for 40-hours of time-off to include sick leave the following week and for a week off in March for ministry training to attend The School of Congregational Elders. (Doc. 114 at 25–26; 62–63; Doc. 115 at 106). Ms. Basford testified that she told him to submit his sick leave request and asked whether he had available time to cover the 40 hours for the ministry training. He said he did not and was asking for half of Wednesday and all of Thursday in unpaid leave, or dock-time. (Doc. 115 at 99–100). He stated that he had two-and-a-half days to which she responded "go ahead and submit those. I will get those approved, but I don't think that I will be able to approve the time for unpaid leave." (Doc. 114 at 26). Plaintiff left her office, considered the conflict between his religious duties and his job, and decided to resign, so he began to write a resignation letter. (Doc. 115 at 105–06). Plaintiff was not aware that Ms. Basford had recommended he be terminated or that she was working on the Plan when he asked her for unpaid leave. (Doc. 113 at 52–54).

Ms. Basford testified that after she denied his unpaid leave request, she had conversations with H.R. about what type of accommodation to make Plaintiff, including whether he could work the Friday before to make up time.[1] (Doc. 114 at 29–30). She determined that there would be no supervisor present on that Friday, and that permitting him to work on the Friday before or after his ministry training would result in Plaintiff being paid over-time due to the City's work week payment schedule. (*Id*. at 32; 44; 66). She also informally considered the workload, staffing and what was occurring within the City's operation. (*Id*. at 43). So, given no options, she decided to deny his request for unpaid leave. (*Id*. at 6–7; Exh. 106).

On February 12th, Plaintiff emailed Ms. Basford's supervisor, Ms. Zielonka, explaining that he had an important religious training school to attend and that he did not have enough vacation time to cover the leave. (Doc. 115. at 49–50; Exh. 47). He explained that he asked for unpaid leave from Ms. Basford but she denied it. (*Id*.) That email prompted discussions between Ms. Basford, Ms. Hughes-Ornelas, and Ms. Zielonka.

---

[1] The City was open from 8:00 a.m. to 12:00 p.m. on Friday with one supervisor present. No supervisor's worked on Friday afternoons so no employees could work then.

1    (*Id*. at 52).  Ms. Basford discussed with Ms. Zielonka her staffing shortages, high workload

2    and her leave approval policy.  (Doc. 114 at 68; Doc. 115 at 54–55; Exhs. 52; 106).  On

3    February 24th, Ms. Zielonka emailed Plaintiff that "approving dock-time is the sole

4    discretion of the supervisor" indicating she agreed with Ms. Basford's decision to deny

5    Plaintiff's unpaid leave.  (Doc. 114 at 47–48; Exh. 106).

6        During his employment with the City, Ms. Basford testified that she never told

7    Plaintiff he was going to be disciplined, threatened to be disciplined, nor did she ask him

8    to resign.  (*Id*. at 72).  Ms. Basford testified that Plaintiff's religion did not play a factor in

9    approving his leave request.  (*Id*. at 64; 65).  She testified that had Plaintiff accrued 1.5

10   days of leave, she would have approved his leave.  (*Id*. at 33; 48).  She also testified that

11   had Plaintiff accrued an unexcused absence for attending the conference without leave

12   approval, he would receive an oral warning, but would not be docked pay, demoted, or

13   terminated.  (Doc. 115 at 40)

14       On February 25th, Plaintiff handed Ms. Basford his resignation letter, and later

15   emailed it to her and Ms. Zielonka.  (*Id*. at 49; Exh 101).  He then left Ms. Basford's office.

16   (*Id*.)  Plaintiff wrote that he was resigning in order to attend the School for Congregation

17   of Elders training.  (*Id*.; Exh. 33).  Later that day, Ms. Basford moved Plaintiff to the Call

18   Center as she and Ms. Zielonka believed it would aid him in being more productive during

19   his last days at work.  (*Id*. at 52).  The move was prompted by a recently run report that

20   showed Plaintiff "had been doing very minimal work," summarized as less than half of

21   what was expected on a given day.  (Doc. 114 at 73; 75). Ms. Basford testified that

22   Plaintiff's move to the Call Center was not due to his religion.  (*Id*. at 75–76).

23       After Plaintiff moved to the Call Center he was closer to Ms. Basford's work area.

24   She noted several employees stopping to speak with him.  (*Id*.)  So, she placed a "Do Not

25   Disturb" sign on his cubicle to reduce traffic at his desk.  (*Id*. at 77).  Plaintiff immediately

26   grabbed it and marched out.  (*Id*. at 52). Plaintiff went to Ms. Zielonka who instructed Ms.

27   Basford not to post the sign, and told her not to worry about him completing any work

28   through the end of his time with the City.  (*Id*. at 53). Ms. Basford testified that the posting

1    of the sign was not due to Plaintiff's religion.  (*Id*. at 78).   Plaintiff's resignation was

2    effective March 3rd.    Ms. Basford testified that Plaintiff requested and was granted

3    vacation leave for March 2nd and 3rd. (*Id*. at 59-60). Plaintiff was thus employed with the

4    City for under one-year. (*Id*. at 55).  At the time he left, he was still on probation. (Doc. 114

5    at 83).

6        After the close of evidence, the Jury was instructed:

7        Plaintiff Aaron Smith asserts that the City of Mesa failed to accommodate
8        his religious beliefs by not approving his request to take 1.5 days of unpaid
         leave to attend a religious conference. The City of Mesa denies that claim
9        and contends that it never took an adverse employment action against
10       plaintiff Aaron Smith. Plaintiff Aaron Smith has the burden of proving that
         the City took an adverse action against him.
11

12       The City also asserts that it provided a reasonable accommodation. Plaintiff
         Aaron Smith denies that claim. The City of Mesa has the burden of proving
13       this claim[.]

14       As for his allegation that the City failed to reasonably accommodate his religious
15  beliefs the Court instructed the Jury:

16

17       In this case, plaintiff Aaron Smith alleges that defendant City of Mesa
         failed to reasonably accommodate his religious beliefs and practices. The
18       City of Mesa denies plaintiff's allegations . . .To establish that defendant
         City of Mesa failed to accommodate his religious beliefs and practices,
19       plaintiff Aaron Smith must show, by a preponderance of the evidence, that
20       the City of Mesa discharged, threatened, or otherwise subjected Mr. Smith
         to an adverse employment action because of his inability to fulfill the job
21       requirement.
22

23       The Court explained to the Jury what constitutes an adverse employment action:

24       An adverse employment action is an act by an employer that materially
25       affects the compensation, terms, conditions, or privileges of employment"
         It then instructed the Jury, 'if you find that plaintiff has not proven his
26       element, your verdict should be in favor of the City of Mesa. If you find
         that plaintiff has proven this element, you should proceed to the next
27       instruction.
28

1
2
The Court's next instruction explained the City's duty to provide Plaintiff with a reasonable accommodation:

> The City of Mesa has a burden of proving by a preponderance of the evidence that the City of Mesa provided Mr. Smith with a reasonable accommodation for his religious accommodations or practices. There may be more than one reasonable accommodation for a sincere religious belief or practice. The accommodation that an employer provides does not need to be the precise accommodation that the employee requests. Any reasonable accommodation by the employer is sufficient to meet the employer's obligation.  A reasonable accommodation could include:
>
> >    A. flexible work schedules;
> >    B. floating or optional holidays;
> >    C. vacation or holiday time that can be taken without restriction;
> >    D. attendance policies providing employees with numerous ways of taking time off when necessary;
> >    E. permitting an employee to make up time lost due to the observance of religious practices; or,
> >    F. leave without pay.
>
> These are only a few examples of potential accommodations that an employer can offer. The employee has a duty to make a good-faith attempt to satisfy his needs through means offered by the employer. If you find that the City of Mesa provided a reasonable accommodation to plaintiff, your verdict should be for the City of Mesa. If you find that the City of Mesa has not proven this element, your verdict should be for Mr. Smith.

(Doc. 117 at 7–9).  After a very short deliberations, the Jury returned a verdict in favor of the City.  (Doc. 96).

Though not clearly stated, Plaintiff's Motion for a new trial presumes that had he been able to present the other employee timecards, the Jury's verdict would be different. The facts and law show otherwise.

## II.    Law and Analysis

Fed.R.Civ.P. 59 provides that a "court may, on motion, grant a new trial on all or some of the issues . . . after a jury trial, for any reason for which a new trial has heretofore been granted in an action at law in federal court[.]"  Rule 59 does not state the grounds on which a motion for a new trial may be granted." *Zhang v. Am. Gem Seafoods, Inc.,* 339

1  F.3d 1020, 1035 (9th Cir. 2003). So, the court is "bound by those grounds that have been

2  historically recognized." *Id.* Those grounds include claims "that the verdict is against the

3  weight of the evidence, or that the trial was not fair to the party moving." *See Moiski v.*

4  *M.M. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007) citing *Montgomery Ward & Co. v.*

5  *Duncan,* 311 U.S. 243, 251 (1940). A new trial may be granted "to prevent a miscarriage

6  of justice." *Passantino v. Johnson & Johnson Consumer Prods.,* 212 F.3d 493, 510 n. 15

7  (9th Cir. 2000).

8          The district court has "the duty. . .  to weigh the evidence as [the court] saw it, and

9  to set aside the verdict of the jury, even though supported by substantial evidence, where,

10  in [the court's] conscientious opinion, the verdict is contrary to the clear weight of the

11  evidence." *Murphy v. City of Long Beach,* 914 F.2d 183, 187 (9th Cir. 1990) (citations

12  omitted).

13          The Jury's verdict could reflect that Plaintiff did not meet his preponderance of

14  evidence burden to show "that the City of Mesa discharged, threatened, or otherwise

15  subjected [him] to an adverse employment action because of his inability to fulfill the job

16  requirement." Or the Jury could have found that he did, but that the City ultimately

17  provided a reasonable accommodation to him, thus they found in the City's favor.  The

18  Court assumes Plaintiff is asserting that he was prejudiced by an inability to introduce other

19  employee timecards, showing that they were approved dock-time, and had he been able to,

20  the Jury's verdict would be different.  The Court is not persuaded.

21          **A.  Relevance of other Employee Timecards**

22          Plaintiff's failure to accommodate claim requires him to show "(1) he had a bona

23  fide religious belief, the practice of which conflicts with an employment duty; (2) he

24  informed his employer of the belief and conflict, and (3) the employer discharged,

25  threatened,  or otherwise subjected him to an adverse employment action because of his

26  inability to fulfill the job requirement."  *Peterson v. Hewlett-Packard Co.*, 358 F.3d 599,

27  603 (9th Cir. 2004).   The parties stipulated facts dispensed with the first and second

28  elements requiring him to prove that 1) Plaintiff had a sincere religious belief or practice

1    that conflicted with his employment duties, and that 2) he informed the City of the belief

2    or practice, and of the conflict.  So the only issue before the Jury was whether the employer

3    discharged, threatened, or otherwise subjected him to an adverse employment action

4    because of his inability to fulfill the job requirement.  And if he prevailed on that issue, the

5    City had to show it was unable to reasonably accommodate his religious beliefs without

6    undue hardship.  *See Boden-Hardge v. Off. Of the Cal State Controller*, 63 F.4th  1215,

7    1224 (9th Cir. 2023).

8        Plaintiff's Motion includes his proffered trial exhibits of two former City

9    employees, each of whom were Permits Technicians, like Plaintiff.  (Doc. 109-1 at 26).

10   Unlike Plaintiff, however, both former employees worked for the City for a minimum of

11   five years.  (*Id*.)  The timecards for both employees include entries for various "Dock-

12   Voluntary" time approved.  (*See id*. at 30 and 37).[2]

13       Although the City's witness, Ms. Basford, testified that she approved dock time for

14   other employees, the Court fails to see how these employee timecards are relevant to his

15   failure to accommodate claim.   Plaintiff says he proffered them to show that other

16   employees were granted dock-time, and so he was unfairly treated. Yet, the timecards of

17   other employees is not relevant evidence of his failure to accommodate claim because

18   whether "similarly situated individuals outside his protected class were treated more

19   favorably" is irrelevant to that claim.  *Peterson*, 358 F.3d at 603.  The fact that the City

20   approved other employees dock-time is not a fact of consequence to his failure to

21   accommodate based on religion claim.  Fed.R.Evid. 401.[3]

22       Plaintiff's Motion misapprehends the narrow issue before the Jury.  He asserts that

23   had he been able to introduce the timecards, it would show that the City "did not follow  .

24   . . its policy of denying dock time to non-new [employees] sic." (Doc. 109 at 3).  He says

25

26   [2] Dock-voluntary is a pay code for unpaid time that is used when an employee does not
     have leave time. (Doc. 115 at 57).
27

28   [3] It may have been relevant to his disparate treatment claim, but for the reasons stated
     *infra*, that claim was dismissed before trial.

1    that had he been able to introduce this evidence, it would show that the City acted

2    unreasonably in failing to accommodate his unpaid dock-time request.  But he ignores that

3    even if the timecards were relevant impeachment evidence, its introduction would risk

4    adversely affecting the integrity of the Jury's determination. *See* Fed.R.Evid. 403 ("[t]he

5    court may exclude relevant evidence if its probative value is substantially outweighed by a

6    danger of confusing the issues, misleading the jury, undue delay and [and] wasting

7    time[.]").[4]   The Court agrees with The City that the other employee timecards had the

8    potential to unfairly conflate his dismissed disparate treatment claim or confuse the Jury

9    by interjecting irrelevant evidence into their failure to accommodate considerations. *See*

10   *Lavelle-Hayden v. Legacy Health*, 744 F.Supp.3d 1135, 1149 (D. Or. Aug. 14, 2024)

11   quoting *Dykzeul v. Charter Commc'ns, Inc.*, CV 18-05826, 2019 WL 8198218, at *10

12   (C.D. Cal. Nov. 18, 2019) ("[I]t would be superfluous if the same facts supported liability

13   under Title VII for both failure to accommodate and disparate treatment.") (citations

14   omitted). The Court will not grant Plaintiff's Motion because the timecard evidence is

15   irrelevant to his failure to accommodate claim.

16          **B.  Weight of the Evidence**

17          Next, the Court must weigh the evidence as it saw it, and set aside the Jury's verdict

18   if it is contrary to the clear weight of the evidence.   *Murphy*, 914 F.2d at 187.   As

19   mentioned *infra*, Plaintiff's only burden was to prove that the City failed to accommodate

20   his religious beliefs and practices because it discharged, threatened, or otherwise subjected

21   him to an adverse employment action because of his inability to fulfill the job requirement.

22   If Plaintiff met his burden, then, the Jury was required to determine if the City provided

23   him with a reasonable accommodation.  The clear weight of the evidence was in the City's

24   favor, with or without the other employee timecard evidence.

25   / / /

26   / / /

27

28   [4]  For instance, a mini-trial on the status of those employees, their respective job
     performances and the reasons for the requested leave would have ensued.

1

2

**1.  Plaintiff's Proof of Discharge, Threats or that he was Subject to an Adverse Employment Action by the City**

3

4

The Jurors were instructed that an adverse employment action "is an act by an employer that materially affects the compensation, terms, conditions, or privileges of employment."  In his testimony, Plaintiff conceded that while he was employed with the City, he was never demoted, never asked to work anywhere but within the three departments for which he was hired, never lost any employment benefits, and never had his salary reduced.  (Doc. 113 at 54–55). The introduction of the two employees timecards would do nothing to aid Plaintiff in this regard. His testimony, alone, is sufficient to defeat Plaintiff's claim of an adverse employment action by the City.  And the Jury's verdict likely reflected as much.

5

6

7

8

9

10

11

12

As proof of discharge, threats or that he was subject to an adverse employment action, Plaintiff begins with his tense relationship with his supervisor Ms. Basford.  He says she was "gunning for him" and points to her January 7th response to his text message. (Doc. 118 at 5). He asserted that her inclusion of the City's policy in her January 7th response was proof that she threatened him with discipline or termination.

13

14

15

16

17

However, a reasonable juror could find that as Ms. Basford testified, Plaintiff had been habitually late, and when he texted her that he was going to be late again, she felt compelled to remind him of the City's leave policy, as she had done for other employees in the past. Indeed, Ms. Basford's response included "in the future, please provide the required notification of one-half hour for unforeseeable sick time" to which he agreed. (Exh. 105).  Plaintiff testified that he was never disciplined for being late on January 7th or any other time.  He also acknowledged that she approved two-hours of sick-time for him on that day.  A reasonable jury could find that Ms. Basford's email was not threatening or disciplinary.

18

19

20

21

22

23

24

25

26

Plaintiff also asserted that he suffered an adverse employment action because Ms. Basford's request to terminate him was close in time to when he asked for leave, he was moved to the Call Center, and she placed a "Do Not Disturb" sign on his cubicle.  Indeed,

27

28

1    the evidence did show that on February 3rd, seven-days prior to his leave request, she had

2    sought permission to terminate Plaintiff for his lack of productivity and progress.  Yet, the

3    evidence also showed that as early as Plaintiff's sixth-month on the job, she did not think

4    he was going to successfully complete his probationary term.  When her request to

5    terminate him was denied, she began working on the Plan to help him improve and to

6    extend his probationary term.  A reasonable jury could conclude that these acts showed

7    that the City was trying to keep Plaintiff employed, rather than discipline or terminate him.

8        Additionally, a reasonable jury could find that Plaintiff's placement in the Call

9    Center was not punitive because it was within the expected work area for Permit

10   Technicians.  Moreover, Plaintiff testified that he had previously worked there.  Finally,

11   the Court does find, as a reasonable juror could, that the placement of the "Do Not Disturb"

12   sign was fleeting as Plaintiff immediately took it down and Ms. Zielonka instructed that it

13   not be put back up.

14   **2.  Whether the City of Mesa Provided Mr. Smith with a Reasonable**
     **Accommodation for his Religious Accommodations or Practices**

15

16       Though the Court finds that the Jury likely determined that Plaintiff did not meet

17   his burden of proof that he was subjected to an adverse employment action, it nonetheless

18   will address the City's burden.

19       Plaintiff asserts that the City "did nothing" to reasonably accommodate his time off

20   request for religious purposes. (Doc. 118. at 7).  To bolster this assertion, Plaintiff

21   emphasizes that at the time of his employment with the City, it had not informed its

22   employees of Title VII and the law related to an employer's responsibility to make religious

23   accommodations.  Indeed, Ms. Basford testified that prior to 2020, she had not received

24   training on religious accommodation.    She believed that making a religious

25   accommodation meant allowing employees to practice their faith without interruption.  She

26   further testified that she did not consider Plaintiff's religion when she denied his leave and

27   had he had enough time, she would have granted his request.

28       The City put forth evidence that Ms. Basford granted Plaintiff all of his leave

1    requests, including for religious reasons.  Indeed, Plaintiff testified that throughout his
2    employment, he was granted multiple requests for leave, including leave he used to attend
3    numerous religious conferences and preaching at congregations.  Ms. Basford also testified
4    that her general policy was that if an employee had the time available, she would approve
5    the leave request.  Plaintiff agreed that if an employee had time available and you requested
6    that time, Ms. Basford would approve the request. As the City argued, throughout
7    Plaintiff's employment, he had been granted all of his leave request with the exception of
8    the 1.5 days he requested.[5]

9         In its Response the City states Plaintiff took "more than 300 hours of time off."
10   (Doc. 119 at 2).  The City introduced Plaintiff's timecard into evidence and went through
11   each category of leave for which he was approved. (*See* Doc. 113 at 34-6; Exh. 102). The
12   Jury was provided with Exhibit 102 and the Court presumes they considered it.  The City
13   argued that Plaintiff had months of advance notice that the religious convention was going
14   to take place, so he could have planned his leave accordingly.  Given the amount of leave
15   he had taken, a reasonable jury could have been persuaded that the City's leave was a
16   reasonable accommodation.

17        Finally, a reasonable jury could also find Ms. Basford's testimony credible when
18   she repeatedly stated that she never considered Plaintiff's religion in approving or denying
19   his leave.  The Jury could have concluded that the City met its burden because Ms. Basford
20   attempted to find ways to approve Plaintiff's leave request.  The testimony showed that
21   Ms. Basford sought help from H.R. and she was unable to have him work the Friday before
22   or after the religious event without gaining a windfall of overtime pay.  Plaintiff also sought
23   out Ms. Zielonka to overrule Ms. Basford and he asked that he be permitted to work,
24   unpaid, on a Friday. Plaintiff asserts that the City could have permitted him to work a
25   Friday or Saturday.  (Doc. 118 at 7).  Yet, the law is clear, a reasonable accommodation
26
27   [5] The Court's Summary Judgment Order notes that Plaintiff was granted approximately
     212 hours of leave, including 20.7 hours of unpaid leave, during his employment.
28   (Doc. 42 at 3).  Though at trial, the City argued he took more than that.

1    need not be on the employee's terms only. *See Gage v. Mayo Clinic, et al*, 707 F.Supp 3d,

2    870, 880 (D. Ariz. Dec. 2023) (citations omitted).  The Jury's verdict was not contrary to

3    the evidence.

4       **III.    Conclusion**

5       The Court finds that precluding Plaintiff from introducing other employee timecards

6    did not result in prejudice to him or result in a miscarriage of justice.  The timecard

7    evidence was irrelevant to his failure to accommodate claim.  The pretrial and trial record

8    supports the Jury's verdict that the Plaintiff failed to meet his burden to show that the City

9    discharged, threatened, or otherwise subjected him to an adverse employment action.

10       **IT IS ORDERED denying** Plaintiff's  Rule 59 Motion for a New Trial (Doc. 109).

11       Dated this 17th day of March, 2025.

12

13

14                             Honorable Diane J. Humetewa

15                            United States District Judge

16

17

18

19

20

21

22

23

24

25

26

27

28